# Caperton v. Hall.

*Statutory Action of Ejectment.*

1. *Deed; adverse possession by life tenant; ejectment by remainderman.*—Where a deed conveying a life estate with the remainder to the children of the life tenant is inoperative as

[Caperton v. Hall.]

a conveyance of the legal title, by reason of defects in its execution, in that there was no attestation or acknowledgment, the life tenant, though in possession of such lands for more than ten years, does not acquire by adverse possession a perfect legal title as against the reversion; and upon the death of the life tenant after such posession, the remaindermen in the deed, who were the heirs at law of the tenant for life, do not inherit a perfect legal title, or any estate from the life tenant; and being the owners of only an equitable estate under the defective deed, the remaindermen can not maintain an action of ejectment against the grantor in said deed. (*Hall v. Caperton,* 87 Ala. 285, overruled in so far as it announces a contrary doctrine.)

2. *Partition in probate court; jurisdiction of only legal estates.* In a proceeding in the probate court for a sale of lands for partition, only the legal estate is before the court for adjudication, and the court has no jurisdiction over equitable rights and estates; and in such a proceeding, where all the parties claiming any interest in the lands are before the court, and the court acquires jurisdiction of all matters and interests contained in the partition, and the proceeding is in every respect regular, and the decree in legal form, and the sale is confirmed, the purchaser at the sale holding a deed executed under the order of the court, acquires the legal estate in said lands, upon which he can defend an action of ejectment subsequently brought by parties who had only an equitable estate therein.

APPEAL from the Circuit Court of Jackson.

Tried before the Hon. JOHN B. TALLY.

This was an action of ejectment, brought by the appellees against the appellant. The facts of the case are sufficiently set forth in the opinion.

Upon the introduction of all the evidence, the court, at the request of the plaintiff, gave the general affirmative charge in their favor. The defendant excepted to the giving of this charge, and also excepted to the court's refusal to give the general affirmative charge requested by him. There were verdict and judgment for the plaintiffs. The defendant appeals, and assigns as error the rulings of the trial court to which exceptions were reserved.

W. L. MARTIN, for appellant.—In an action of ejectment, the party having the superior legal title must prevail, whatever may be the equities of the other party.

[Caperton v. Hall.]

3 Brick. Dig. 325, §§33, 34; *Potts v. Coleman*, 67 Ala. 221.

Mrs. Caperton's possession was that of a tenant for life; was not adverse to appellant or those whose interests he has acquired, and did not have the effect to clothe her with the legal title to the land. There can be no such thing as adverse possession by a person who is in the rightful possession of land. If there be no other person entitled to present possession, there can be no repugnancy, actual or constructive, betweeen the mere possession of the occupant and the rights of any one else. A possession, to be adverse, must operate to disseize or oust some other claimant of his possession or right of possession.—*Pickett v. Pope*, 74 Ala. 122; *Pope v. Pickett*, 65 Ala. 487; *Smith v. Cooper*, 59 Ala. 494; *Thrasher v. Ingram*, 32 Ala. 645; *Pendley v. Madison*, 83 Ala. 484; 1 Amer. & Eng. Encyc. of Law, 237, 238; *Malloy v. Bruden*, 86 N. C. 251; *Musham v. Musham*, 87 Ill. 80; *Melvin v. Waddell*, 75 N. C. 361; *Culver v. Rhodes*, 87 N. Y. 348.

Any possession of land which is accompanied by the recognition of a superior title still existing, can not be adverse to that title. It must be made to appear that the possession was under a claim or color of title, hostile to the true owner, and a claim of the entire title. And the same must be in open hostility to the true owner.—Tyler on Ejectment and Adverse Possession, pp. 883, 884, 886, 887; *Allen v. DeGroodt*, 14 Am. St. Rep. 626, 635, note. "Whoever enters under a deed to land enters claiming according to his deed; and if the deed be defective, and nothing pass under it, it may still be evidence, both of the extent and character of the occupation."—Buswell on Lim. & Adv. Pos., p. 355, §255. "A deed cannot be color of title beyond what it purports to convey."—*Woods v. Banks*, 14 N. H. 101.

J. E. BROWN, *contra*.

COLEMAN, J.—The action is ejectment. Some of the questions involved in this case were adjudicated in the case of *Caperton v. Hall*, 83 Ala. 171. The case itself was here on a former appeal, and reported in 87 Ala. 285. There are some facts in the present record,

which were not in either record on former appeals, or else were not duly considered, and we deem it necessary to state the facts with some particularity and at length, in order to properly understand the reasons for our conclusion of this appeal.

George W. Caperton, being the owner of a tract of land. containing about eight hundred acres, in November, 1867, sold and by deed conveyed the same to four sons, children by his first wife, to-wit, Samuel, Adam, Hugh E. and John F. Caperton. George W. Caperton, the grantor, died in July, 1868, and left surviving him, his widow, Delaney Caperton, and four children by his last wife, to-wit, Mary, Perminta, Eletha and Georgia Caperton. The widow, Delaney Caperton, did not join her husband in the deed to his four sons by his first wife, and on the death of her husband, became entitled to dower in the lands conveyed to them. The husband and father died in July, 1868. Hugh Caperton died intestate without having married, in 1867, and John F. Caperton, another of the four sons, died intestate in September, 1868, without having married. Upon the death of Hugh Caperton and John F. Caperton their interest in the lands descended to the two brothers, of the whole blood, and their sisters of the half blood, share and share alike. In 1870, after the death of the husband and grantor, and after the death of Hugh and John F. Caperton, Samuel Caperton and Adam Caperton, the surviving grantees in the deed from their father, settled with Delaney Caperton, the widow, for her dower interest in the tract of land conveyed to the four sons, by executing an instrument to her, containing apt words to convey to her in fee simple with warranty against the grantors, "for her natural life, and at her death to her four children by her late husband, George W. Caperton, deceased, to-wit, Mary, Perminta, Letha and Georgia Caperton," one hundred and five acres of land particularly described; and in consideration therefor, the widow, Delaney, released and conveyed to them her dower rights in the remainder of the tract.

In 1869 or 1870, the exact date is not given, Letha Caperton, one of the four children of Delaney Caperton, died intestate without issue. Upon her death,

[Caperton v. Hall.]

whatever interest she owned, by virtue of the convey-
ance from Samuel Caperton and Adam Caperton, in the
one hundred and five acres of land conveyed in settle-
ment of the dower claim, and whatever interest she in-
herited upon the death of Hugh Caperton and John F.
Caperton in the entire tract of land, descended to her
brothers and sisters of the whole blood and half blood
alike.

It is proper to state in this connection, that the in-
strument executed by Samuel Caperton and Adam
Caperton, in settlement of the dower claim of Delaney
Caperton, though containing apt words for a deed of
conveyance, was neither attested by witnesses nor ac-
knowledged before a proper officer, and was, therefore,
inoperative as a conveyance of the legal title, but was
sufficient as a written agreement to take it out of the
influence of the statute of frauds, and to furnish
grounds to entitle the grantees to a specific perform-
ance as an agreement to convey.

At this time, when Letha Coperton died, the rights
of the parties were as follows: Delaney Caperton, the
widow, by virtue of the conveyance to her, owned in
lieu of dower, in her own right for and during her nat-
ural life, an equity to all the right and interest of Sam-
uel Caperton and Adam Caperton in and to the one hun-
dred and five acres, and her four children, as purchas-
ers, owned in fee the equitable reversion to this part of
the land. By the death of Hugh and John F. Caper-
ton, the four children of Delaney Caperton succeeded
to four-sixths or two-thirds of one-half of the legal title
to all the land, including the one hundred and five acres,
and Samuel Caperton and Adam Caperton, in addition
to their one-half acquired by their deed from their
father, succeeded to one-third of the remainder interest.
We are considering now the legal title without regard
to the equities. If the instrument executed by Samuel
Caperton and Adam Caperton to Delaney Caperton had
been properly attested or acknowledged, so as to oper-
ate as a conveyance of title, inasmuch as it was execut-
ed subsequent to the death of Hugh and John F. Caper-
ton, whatever legal estate inherited by them would have
passed by the grant, but being only an agreement to con-
vey, only an equitable title passed and not the legal ti-

[Caperton v. Hall.]

tle. When Letha died, the only legal estate vested in her was that inherited from Hugh and John F. Caperton, and upon her death her estate descended to her brothers and sisters of the whole and half blood alike.

From this statement, the legal and equitable estate of all the parties is apparent. Delaney Caperton died in October, 1885, her lands having been rented for that year. A controversy arose between Samuel Caperton and the children of Delaney Caperton, or their descendants, as to who was entitled to the rents for that year. A bill was filed in a court of equity to determine the controversy, and this is the case reported in 83 Ala. *supra.* Being a court of equity, it had jurisdiction to consider and determine the equities of the parties. The court held that although the instrument of conveyance from Samuel and Adam Caperton to Delaney Caperton for and during her natural life and to her children in fee after her death, there being neither an attesting witness nor an acknowledgement, could not operate to pass the legal title, it was sufficient to stand as an agreement to convey, and a court of equity would hold that an equitable estate vested in the grantees of Samuel and Adam Caperton, and which in equity had precedence over their legal estate. Under this view, the rents were decreed to the reversionary grantees, children or descendants of Delaney Caperton. There can be no doubt of the correctness of this conclusion. This decree of the chancery court settling the equitable rights of the parties to the rents, did not and could not operate to divest the legal title from those who held it. The bill was not filed for that purpose, and the decree did not in terms or by implication have this effect.

After the determination of the chancery suit, the plaintiffs, who are descendants of the four children of Delaney Caperton, but whose interest, it seems clear, is not that of heirs of Delaney Caperton, but as purchasers of an equitable estate under the conveyance from Samuel Caperton and Adam Caperton, and as heirs of Hugh and John F. Caperton, and Letha Caperton, instituted the present action of ejectment, against Samuel Caperton. In this action in a court of law, only the legal title prevails, and the doctrine of an equitable estoppel cannot be invoked by either party.

The plaintiffs must recover upon their legal title. By the deed of George W. Caperton the legal title vested in his four sons, Samuel, Adam, Hugh E. and John F. Caperton. It remains in these parties yet, unless it has passed, by an instrument in writing sufficient to convey the legal title, or has been divested by a decree, and proceedings thereunder of a court of competent jurisdiction, or has been divested by adverse possession, or descended to next of kin by death. We have already declared, which is in accordance with previous decisions, that the instrument of Samuel Caperton and Adam Caperton did not pass the legal title. So far as this instrument is concerned, the legal title remained in the grantors, Samuel and Adam Caperton, whatever may have been its effect as to the equitable rights of the parties. The decree of the chancery court settling the rents, reported in 83 Ala. *supra,* did not divest the legal title. It only operated upon the equitable rights of the parties, and is *res adjudicata* as to the equities. This is clearly stated in the latter clause of the opinion to be found in 87 Ala. 294, and in the opinion in 83 Ala. 171.

Was the legal title divested by the adverse possession of Delaney Caperton? This brings us to the consideration of the opinion in 87 Ala. *supra.* On page 290, speaking of Delaney Caperton, it is said: "She entered pursuant to the agreement with Adam and Samuel Caperton. * * * This after ten years of such holding gave her a right to defend against any adversary claim. * * * The title which Mrs. Caperton had acquired by adverse holding was the only legal title she held—the only title we can consider in this action at law. She died the holder of a legal title acquired by adverse holding; and at her death that title devolved immediately on her heirs at law, and armed them with the same right to sue and defend, which she could assert if living." We feel forced to recede from the proposition so far as it holds that Mrs. Caperton acquired by adverse possession a title which devolved on her heirs at law, and armed them with the right to sue and defend. Certainly the title acquired by her by adverse possession, did not vest in her a greater interest, or arm her with more rights, as against Samuel

[Caperton v. Hall.]

and Adam Caperton, than she would have acquired, had the conveyance been free from defect, and vested in her a perfect title for life. Suppose there had been no disposition of the reversion, and only a life estate conveyed, it is clear that after the termination of the life estate, the grantors could re-enter, by virtue of the legal title remaining in them. The heirs of the life tenant, would have inherited no estate. The principle declared in the opinion divested the remainder estate vested by the conveyance. It would have been correct, had the instrument undertaken to convey to her a perfect title in fee. Limiting her estate to life, with remainder to her children, the life tenant could not hold adversely to the remaindermen, and thereby cut off their interest. Ten years adverse possession was sufficient to bar the assertion of the legal title against her during her life estate; but as she only claimed a life estate by virtue of the conveyance to her, and made no other claim, it was not an adverse claim against the reversion. The parties who held the legal and equitable title to the reversion, were not called on to assert their titles so long as the life estate existed. When the life estate terminated, the legal title was in Samuel Caperton and those who inherited as the heirs of Adam, Hugh E. and John F. Caperton. The only legal title which these plaintiffs held was that inherited by them from Hugh E. and John F. Caperton, and Letha Caperton, and in the action of ejectment they could not recover any more.

The defendant, Samuel Caperton, relies upon a deed obtained as purchaser at a sale of the lands made for partition, by decree of the probate court. In the opinion reported in the case in 87 Ala. *supra,* it was declared that Delaney Caperton had acquired by adverse possession a title to the lands, that there were no co-tenants to this land, and as she was not a party to the partition proceeding, which were instituted and concluded in her lifetime, the decree and sale had no effect upon her title. Mrs. Caperton was not a party to the partition proceedings and her life estate was not affected. It has been demonstrated, however, that Mrs. Caperton did not hold adversely to the reversionary interest, and that her entire estate terminated with her life. She left no inheritable interest. In the proceeding to sell

for partition and distribution, these plaintiffs and all
parties claiming any interest in the lands, were before
the court.    The petition is in legal form.    It gave the
court jurisdiction of all matters and interests contained
in the petition.    The evidence seems to have been taken
according to the requirements of the statute.    The de-
cree is in form, ordering the sale of the land, the sale
was made according to the decree, the purchase money
paid, the sale confirmed, and a deed executed under the
order of the court to Samuel Caperton who was the pur-
chaser.    This decree was not appealed from, and stands
as the decree of the court.    Nevertheless, the uncontro-
vertible fact is, that the plaintiffs acquired by virtue of
the conveyance from Samuel Caperton and Adam Cap-
erton only an equitable estate.    In cases of partition of
land or sale for partition, the probate court has no ju-
risdiction over equitable rights and estates.    Only the
legal estate was before the court for adjudication, and
only this determined by the decree.    The equities were
not adjudicated.—*Caperton v. Hall,* 83 Ala. 171, 173-4,
and authorities cited.

If the purchase money was distributed and the plain-
tiffs participated in the distribution and received their
share, it may be that an equitable estoppel would arise
in a court of equity.    In a court of law it is unavaila-
ble.    Here in the action of ejectment only legal titles
are considered.

The judgment is reversed, and the cause is remanded.
BRICKELL, C. J., not sitting.