(76 South. 59)

KIDD et al. v. CRUSE et al. (7 Div. 843.)

(Supreme Court of Alabama. May 24, 1917.)

1. TRUSTS ⬦136 — FAILURE TO EXECUTE NAKED TRUST—EFFECT.

A failure to execute a naked and passive power or trust, used merely for passage of the title, would not defeat or impair the estates in or titles to the lands, in view of Code 1907, §§ 3408, 3409, placing the legal as well as the equitable title in the beneficiary of such a trust.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 179.]

2. TRUSTS ⬦131—NAKED TRUST—EXECUTION—PURPOSE OF STATUTE.

The purpose of enacting Code 1907, §§ 3408, 3409, placing the legal as well as the equitable title in the beneficiary of a naked trust, was to change the common-law rule, which kept the legal and equitable titles separated in such cases.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 175, 175½.]

3. TRUSTS ⬦136 — CONSTRUCTION — NAKED TRUST.

Where neither executors nor trustees named in will or deed were charged with any duties concerning or control over land which was given in trust, they were mere repositories of the naked legal title.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 179.]

4. TRUSTS ⬦284 — EXECUTION OF TRUST — PRESUMPTION—LAPSE OF TIME.

After 20 years, the courts will presume that executors conveyed trust property to trustees as directed by will, in the absence of contrary evidence; 20 years having been agreed on by common consent as such limitation.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 405.]

5. WILLS ⬦688—CONSTRUCTION—RIGHTS OF REMAINDERMEN.

The fact that executors never conveyed trust property to trustees as required by will would not prevent testator's children from taking the legal title to the remainder given them by will after the life tenant's death, since in such cases the legal title is in the remaindermen after termination of the life estate, when all those who take as remaindermen and their properties are ascertained.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1644–1649.]

6. ESTATES ⬦10(1)—"MERGER"—DEFINITION.

The merger of estates is the fusion or absorption of the one into the other, where a greater and a lesser estate coincide and meet in the same person without any intermediate estate, the effect being the annihilation of the lesser estate, or, more accurately speaking, a coalescing of the two, each imparting to the whole its particular attributes.

[Ed. Note.—For other cases, see Estates, Cent. Dig. §§ 9, 10.

For other definitions, see Words and Phrases, First and Second Series, Merger.]

7. ESTATES ⬦10(1) — MERGER — PURPOSE OF DOCTRINE.

The reason for the doctrine of merger is that protection may be afforded the estate of one who subsequently acquires in the property an interest greater than that which he first possessed; the doctrine being intended primarily to

---

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

protect the estates by causing them to blend or coalesce, and not to destroy them.

[Ed. Note.—For other cases, see Estates, Cent. Dig. §§ 9, 10.]

8. ESTATES ☞10(1)—MERGER—ESTATES CREATED BY SAME INSTRUMENT.

A merger will be *held* not to have taken place where the two estates are created by the same agency or instrument and at the same time.

[Ed. Note.—For other cases, see Estates, Cent. Dig. §§ 9, 10.]

9. WILLS ☞626 — CONSTRUCTION — ESTATE CONVEYED—MERGER.

A devise of a joint life estate to testator's wife and children, and also of a fee-simple estate in remainder to the wife's surviving children, created two separate estates to the children, since the children did not take the entire interest in the life estate, and a merger would defeat the object and purpose of the testator.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1301.]

10. LIFE ESTATES ☞ 8— PROPERTY SUBJECT TO—LIFE ESTATE AND REMAINDER.

Where there was no merger of a life estate and a remainder devised by the same will, the latter estate could not be acquired by adverse possession pending life estate, since adverse possession, however long continued during the existence of a life estate, cannot defeat a vested remainder, and there is no privity between tenants for life and vested remaindermen.

[Ed. Note.—For other cases, see Life Estates, Cent. Dig. §§ 24–28.]

11. EJECTMENT ☞10—SUFFICIENCY OF EVIDENCE.

Where defendants showed or claimed no title against a remainder, except that acquired by adverse possession against a preceding life estate devised by the same will and 10 years had not elapsed between termination of life estate and bringing of suit, they could not recover in ejectment.

[Ed. Note.—For other cases, see Ejectment, Cent. Dig. §§ 30–41.]

Appeal from Shelby County Court; E. S. Lyman, Judge.

Ejectment by Dutch Cruse and others against Douglas W. Kidd and others. Judgment for defendants, and plaintiffs appeal. Reversed and remanded.

James M. Kidd, of Birmingham, for appellants. Leeper, Haynes & Wallace, of Columbiana, for appellees.

MAYFIELD, J. This is the second appeal in this cause. A report of the former appeal may be found in 195 Ala. 22, 70 South. 166.

As is shown on former appeal, the title of these appellants (appellees on the former appeal) depends upon the construction of the will of one John W. Kidd. That will was first construed by this court, as is shown in the former opinion, in the case of Kidd v. Borum, 181 Ala. 144, 61 South. 100; Ann. Cas. 1915C, 1226.

On the former appeal in this case the will was not construed further than was necessary to decide that appeal. That appeal could have been well decided on an agreement of counsel as to what the evidence on the trial showed. There are, however, some dicta in that opinion which were formulated by the writer of this opinion which, on more thorough and mature consideration, we conclude are not correct statements of the law as to a proper construction of the will of John W. Kidd, and some which are not in all things in accord with the construction placed upon the same will in the opinion in the case of Kidd v. Borum, supra. On this appeal it is necessary to construe this will, and necessary to decide whether or not there was created by that will a merger of the life estate bequeathed to the testator's children into the remainder given to the same children. It also becomes necessary to decide whether or not the children of the testator, under and through whom appellants claim title, took by virtue of the will or by inheritance. Both of these questions the court expressly declined to decide on the former appeal. These questions we will decide, treating them in the inverse order in which they are stated above.

We now hold and decide that the children of the testator mentioned in the will took under the will, and not by inheritance; that they each took two separate estates in and to the land in question: One, an estate during the life of their mother, who was the wife of testator, that is, an estate per autre vie; the other, the remainder or fee after the death of their mother, the life tenant, and who, during her life, as a tenant in common with the children, had a one-fifth interest.

We also decide that there was no merger of these two estates or interests, but that they were kept separate; and that the children could have lost the life estate by adverse possession, during the life of their mother, without destroying their title to the remainder, the right or duty to possess which did not arise until the death of their mother, the life tenant.

On the former appeal we declined to pass upon the kind, character, or nature of the trust created, or attempted to be created, by the will or trust deed, because the determination of this question was not necessary to a decision of that appeal; the question being eliminated by an agreement of counsel to the effect that the trust was never executed, and as to adverse possession. No such record or agreement is now before us; and it is therefore incumbent upon us to pass upon the question of the nature and character of the trust, as well as that of adverse possession.

The will in terms passed a life estate to the wife, and, by necessary implication an estate to the children named and (one) after-born, during the life of the wife, with the fee to the same children after her death.

[1] The trust created or attempted by the will or trust deed (one or both) was at best a mere naked or passive trust, and was intended simply as the repository, or conduct for the passage, of the title, as to both the estate for life of the wife, and the estate in

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

remainder. The will merely conferred a power or imposed a trust to convey, as directed in the will and in a former deed of trust referred to and made a part of the will. Being a naked and passive power or trust, a failure to execute it would not defeat or impair the estates in, or titles to, the lands, even if the naked legal title had passed to the executors by virtue of the will; but, as we have shown, this was not the case. Had it been the case, our statutes of uses, trusts, and powers would apply, so as to pass the legal, as well as the equitable, title to the beneficiaries named therein.

This case is made to fall certainly within the influence and effect of sections 3408 and 3409 of the Code. These sections read as follows:

"No use, trust, or confidence can be declared of any land, or of any charge upon the same, for the mere benefit of third persons; and all assurances declaring any such use, trust, or confidence must be held and taken to vest the legal estate in the person or persons for whom the same is declared; and no estate or interest can vest thereby in any trustee." Section 3408.

"Nothing in the preceding section contained shall prevent the conveyance of real or personal property, or the issues, rents, and profits thereof, to another in trust for the use of the grantor, or his family, or of a third person, or for any other lawful purpose; but in such case the legal title vests in the trustee." Section 3409.

[2] The purpose of these statutes, as often reaffirmed by this court, was to change the common-law rule which kept the legal and equitable titles separated in such cases; the statutes now have the effect to place the legal, as well as the equitable, title in the beneficiary, if the transaction is brought within the influence of either statute. Berry v. Bromberg, 142 Ala. 339, 37 South. 847; Schaffer v. Lavretta, 57 Ala. 14. These two sections were first construed by this court in the case of You v. Flinn, 34 Ala. 409, and the construction there announced has ever been followed. And the statutes have been frequently readopted with such construction upon them. In the opinion in the You Case, page 414, after showing that our statutes, to some extent, were taken from the New York statutes, it was said:

"Without further pointing out the particulars in which our statutes are less comprehensive than those of New York, we do not hesitate to declare that section 1306 [now section 3408] of the Code converts into legal estates in the beneficiary all titles and interests in lands, where the nominal title is vested in a naked or dry trustee—one who is not placed in possession, and who is required to perform no duties —and where the instrument creating such nominal title declares a use, trust or confidence for another, to the same extent as if the deed or conveyance had been made directly to the beneficiary. On the other hand, it has no application to conveyances of either real or personal property, although the conveyance may declare that it is in trust for the use of the grantor or another; provided the trustee is charged with the control, management, or other active duties in regard to the trust fund. This latter class falls under section 1307 of the Code."

[3] Neither the executors nor the trustees named in the will or deed are charged with any duties concerning, or control over, the land; they are, at most, mere repositories of the naked legal title. Hinton v. Farmer, 148 Ala. 211, 42 South. 563; s. c., 121 Am. St. Rep. 63. But as to some classes of personalty they are charged with duties and control; that is, they are required to select it.

[4] While there is no positive proof that the executors ever conveyed to the trustees, as directed by the will, yet there is no evidence on this appeal to show that they never did so convey. After this great lapse of time the courts, if necessary, will presume that they did so convey, in the absence of all proof on the subject.

In Alabama, as in most of the states, there is a growing disposition to fix a period beyond which human transactions shall not be open to judicial investigation, even in cases for which no statutory limitation has been provided. This period is sometimes longer, and sometimes shorter, dependent on the nature of the property and the character of the transaction. By common consent, 20 years has been agreed on as a time at the end of which many of the most solemn transactions will be presumed to be settled and closed. See 2 Story's Eq. 1028b.

The best-considered case which we have seen on this subject is that of Den ex dem. Obert et al. v. Bordine, 20 N. J. Law, 394. It is there said (after reviewing the English and American cases):

"Courts have been very free to presume deeds, in the execution of trusts according to the duty of trustees, where it is for the sole benefit of the cestui que trust, where the trust has been fulfilled and where it is the duty of the trustees to convey, or a court of equity would decree a conveyance. These cases range as to the length of time from many to a very few years; but it is evident from the principle upon which the decisions go that a very short time in case of a clear trust would be sufficient. Law grounds its presumption on the fact that a court of equity would compel the execution of such trusts, and seems in this instance very nearly to follow the rule in chancery that what ought to be done shall be considered as done. Cases cited supra: Jackson v. Woolsey, 11 Johns. R. 456; Cowen's Notes to 1 Phil. Ev. 162, note 311."

If it could be said that the will or deed of trust (one or both) created any active trust or duties, such duties certainly ceased after the death of the wife of the testator, who was the life tenant; and the case would then be brought within the rule declared in the cases of McBrayer v. Cariker, 64 Ala. 50, and Edwards v. Edwards, 142 Ala. 267, 39 South. 82. In the latter case it was said:

"The principle of the statute was patent in the construction and interpretation of the deed involved in the case of McBrayer v. Cariker, 64 Ala. 50. It was there held that by a conveyance to Sidney S. Cariker in trust for his mother and her living and after-born children the grantor intended that the trust should continue only during the life of the mother, and that upon her death the full legal title freed from the trust should unite with the equitable title in her children; and the conveyance was given effect accordingly, though it contained no words to that effect. The result was reached mainly upon the considerations that 'the preservation of

the legal title until they who were entitled to take as after-born children could be ascertained is the characteristic of the trust, distinguishing it, if it is distinguishable, from a naked, dry, or passive trust, which the statute [of uses] divests and removes as an obstacle to the union in the cestui que trust of the legal and equitable estate,' and that as all the ultimate beneficiaries were necessarily ascertained at the death of the mother, the extension or enlargement of the estate of the trustee beyond her life, 'intercepting the vesting of the fee simple, legal estate in the cestui que trust, would be without an object and of detriment to them.' "

[5] If it should be conceded or proven that the executors never conveyed to the trustees, this would not prevent the children from taking the legal title to the remainder by virtue of the will, after the death of the life tenant. The authorities all hold that in a case like this the legal title is in the remaindermen, after the termination of the life estate, when all those who take as remaindermen are ascertained, and the properties which they take are ascertained. And of course if the will never invested the executors with the legal title, but with a mere power, and imposed the duty to convey, their failure to perform would not defeat the declared purpose and intent of the grantor that his children named should take the remainder in the lands after the death of the life tenant. This was in effect held in the case of Kidd v. Borum, supra.

It is insisted on this appeal, as it was on the former, that there was a merger of the estate during the life of the wife, into the remainder after her death, because the two estates or titles were at the same time vested in the same persons, the children of the life tenant. There is no doubt that both estates were vested in the same parties at the same time, which on first thought is very persuasive to the conclusion that there was a merger, so far as the children were concerned, and that their estate during the life of their mother was swallowed by the remainder which was at the same time vested in them. The law seems not to be very definitely or certainly settled as to when and under what conditions mergers of estates are effected, and under what conditions they are to be deemed as held separate and distinct. Much has been written on the subject, but no certain or fixed rules are announced or accepted by the writers on the subject, which will enable one to tell in all cases whether or not the merger is effected. Every case, of course, must depend and be decided upon its own peculiar and particular facts, and the facts of no two are exactly alike.

[6] The accepted definition of a merger of estates is the fusion or absorption of the one into the other; the status being said to follow, as a general principle of law, where a greater estate and a lesser coincide and meet in one and the same person, without any intermediate estate. The effect is the annihilation of the lesser estate—it being said to be merged, or sunk or drowned in the greater.

5 Words and Phrases, p. 4492, subject, Merger, and authorities there cited. But while the expression is that the lesser estate is annihilated, drowned, etc., this is not in law or in equity, for all purposes, strictly true. It is, more accurately speaking, a coalescing of the two, each imparting to the whole its particular attributes. The estate thus formed by the coalition of two others ought not to be less valuable or less durable than one, alone, would be. It is therefore said by some courts that the law will not declare or treat the coalescence as a merger, except where it is perfectly indifferent to the party in whom the two estates are so united, or where it is to his advantage to so treat them, and that they are never so treated if any intervening right will be prejudiced thereby. Watson v. Dundee Mortgage Co., 12 Or. 474, 8 Pac. 548, 552. It is also said by some courts that it often becomes a question of intention whether the two estates should be kept separate, though in the same person, and that they will be considered and treated as separate if this would be in accord with the justice of the case and with the intention of the parties to the grants. Duncan v. Smith, 31 N. J. Law (2 Vroom) 325, 327; Den ex dem. Burhans v. Vanness, 10 N. J. Law, 102, 106. Chief Justice Beasley, in Duncan v. Smith, supra, says:

"But the application to the facts of this case of the principle of merger, in its utmost rigor, does not, as I think, lead to the result claimed for the defendants. That unity of ownership of two estates in the same land which occasions merger does not, of necessity, destroy either of such estates; its effect often is to blend or combine them together. 'The true idea of merger,' says Chief Justice Ewing, in Den v. Vanness, 5 Halst. 106, 'consists in a thorough coalescence, an indissoluble union of the merging estates; each still retaining its rights and advantages, or, perhaps, more properly speaking, each imparting to the whole its peculiar attributes.' "

"Indeed, so little is the technical doctrine of merger favored in law that it as been repeatedly decided, and the rule may be considered to be now completely settled, that the estates meeting in the person will not merge unless it appears that such was the intention of such person, expressly declared or manifestly to be implied from such merger being to his advantage. 1 Washb. R. P. 564."

[7] The reason, or, at least, one of the reasons, upon which the doctrine of merger is founded is that protection may be afforded the estate of one who subsequently acquires in the property an interest greater than that which he first possessed; it was never intended to destroy the greater estate subsequently acquired. The doctrine is intended primarily to protect the estates, by causing them to blend or coalesce, and not to destroy them.

Most of the cases wherein it has been a question whether or not the doctrine would apply were cases in which the owner of the estates was attempting to invoke the doctrine to preserve his estates, and not cases in which the doctrine was invoked by those who sought

to destroy, cut off, or terminate the rights of the holders or owners of the former existing estates. Consequently the rules or tests by which it is to be determined whether or not a merger was created were limits beyond which the owners were not allowed to extend the doctrine, or were requisites the law prescribed, before the owners could avail themselves of the benefits of the doctrine. That is, the primary reason of the doctrine was to preserve the greater estate, not to destroy it. It was the lesser or contingent estate which was destroyed or lost, swallowed up in the greater, though it sometimes resulted that contingent remainders were thus destroyed or lost.

Some of these requisites which the owner of the greater estate was required to show, in order to invoke the doctrine, were two distinct estates meeting in the same person at the same time and the absence of an estate intervening between them. A distinction has been made, however, as to the doctrine of merger, in courts of law and in courts of equity, where the merger of legal and equitable titles is involved, such as titles created by mortgages, and subsequent conveyances. See Welsh v. Phillips, 54 Ala. 309, 25 Am. Rep. 679; Otis v. McMillan, 70 Ala. 54, 59.

Here, however, both estates combined are legal, an estate for life, and an estate in remainder, both created by the same will. But the question as to the effect of the merger arises in a court of law, in an action of ejectment. Many authorities on the subject are reviewed or cited in the case of McCreary v. Coggeshall, 74 S. C. 42, 53 S. E. 978, 7 L. R. A. (N. S.) 433, and note thereto.

[8] It will be seen from an examination of the authorities collected and cited in the above case, and the note thereto (7 L. R. A. [N. S.] 433), that whether or not a merger results is often to be determined by considering whether the two estates were vested in the same person or class, by the same conveyance or devise, or at the same time by inheritance, or whether, one being vested at one time by one agency or instrument, the other was subsequently vested by another agency or instrument. That is, that a merger will be held not to take place where the two estates are created by the same agency or instrument, and at the same time, although a merger will be held to result if the same estates be acquired by the same person, but through different agencies or instruments and at different times. As before stated, the doctrine of merger is considered as a technical rule, when it is allowed to destroy a contingent estate; and much more, of course, would it be if it should be allowed to destroy the greater estate. Mr. Washburn illustrates the rule by giving a case in which a contingent estate is interposed between a life estate and a reversion: If the life estate should be swallowed up in the reversion, the contingent remainder would fall for want of support.

The author then adds that this does not occur, however, where all the estates are created or carved out by the same act, deed, or will, because the technical doctrine would then be allowed to defeat the intention or purpose of the act, deed, or will. 1 Wash. (6th Ed.) §§ 367, 368. The same doctrine is stated by Mr. Tiedeman, Real Property (3d Ed.) 155.

[9] The case nearest like the one in hand is that of Luquire v. Lee, 121 Ga. 624, 49 S. E. 834, the facts of the two cases being strikingly similar; and we can do no better than to quote and adopt, as ours, a part of that opinion. It is there said:

"The estate created by the deed from Jepson to Stubbs * * * was a joint life estate in Mrs. Lee and her children during the life of Mrs. Lee, with a fee-simple estate in remainder to the children of Mrs. Lee who survived her."

By substituting "will" for "deed", and "Mrs. Kidd" for "Mrs. Lee," we have the case in hand.

"There was not, for at least three good reasons, any merger of the two estates created by the trust deed now under consideration: (1) The children of Mrs. Lee did not take the entire interest in the life estate thereby created, but held it, together with her, as long as she continued in its enjoyment, and, after she parted with her interest therein by deed, owned it in common with her grantee. Accordingly, because of the ownership of a part of the life estate by a third person, the life estate could not, at any time prior to Mrs. Lee's death, merge into the estate in remainder created by the trust deed in favor of her children. In other words, the class of persons entitled to enjoy the life estate was not, in personnel, the same as the class of persons in which the estate in remainder vested. No merger could take place without, on the one hand, ignoring and depriving Mrs. Lee, or her grantee, of the interest in the life estate conferred upon her, or, on the other hand, sacrificing the interest of her children in the life estate by limiting their enjoyment of the property to their estate in remainder and postponing such enjoyment till her death. (2) To declare such a merger would defeat the object and purpose of the donor; and it is well settled that this may not be done where the donor has, by one and the same instrument, conferred upon different persons, respectively, separate and exclusive interests or estate in the property conveyed. See 1 Wash. Real Prop. (6th Ed.) § 368. Indeed, the doctrine of merger of estates is designed primarily for the benefit of one who acquires an interest in property greater than that he possessed in the first instance, and will not be held to apply, against his will, to his disadvantage. Knowles v. Lawton, 18 Ga. 476, 63 Am. Dec. 290; Cole v. Grigsby (Tex. Civ. App.) 35 S. W. 680, and authorities cited."

It is true that the above case is distinguished from this, in that it was only the children who survived the mother (Mrs. Lee) that took the fee; while here, all took the fee, whether they survived or not, that they took under the will, and took an inheritable estate which would descend to their heirs, or which they could dispose of during their lives; but we do not think that this difference would change the result as to a merger. As that case shows, the difference was only one of the three reasons mentioned, which would justify a merger.

Here it is perfectly plain that the testator intended to create the two estates, one, during the wife of the widow, the other, a fee after her death; and to say that there was a merger, which destroyed either estate so created, would obviously defeat the intention of the testator. To hold that because the children had a right of joint occupancy with the mother during her life, but had allowed her or her grantee to enjoy the full or whole right of occupancy, would defeat their title in fee as well as their life estate, or that for the life of their mother, would be contrary to the clear intention of the grantor, and against the interests of those who were intended to have the fee.

For these reasons we hold that there was no merger of the estates in this case, such as would defeat the title of the remainder in fee, by means of adverse possession, pending the life estate, even though the children held estates, one during the life of their mother, and one, the remainder in fee, after her death. In fact, this was the holding of this court, in construing the same will, in the case of Kidd v. Borum, 181 Ala. 144, 61 South. 100, Ann. Cas. 1915C, 1226, although there was no express ruling or decision on the question of merger.

The cases relied upon by appellee as holding that the facts in this case show a merger —and they are legion—are distinguishable from the case in hand, either because, in these cases, the fee was by reversion, and not by remainder, as in this case, or because the two estates merged were acquired by different acts, deeds, wills, or agencies, or at different times or under different circumstances, or there was at the time of the merger no right, title, or interest, in estate or in right of possession, except in those in whom the two estates were merged.

It would require almost a volume to point out in an opinion the difference between each case relied upon, and the case at bar; but each, so far as we could find it embraced in our library, has been examined, and one or the other of the differences mentioned has been found to exist; and in many of them that difference, and others, have been stated to change the rule by which the fact of merger would be tested.

Failure to make this distinction between some of these cases relied upon by appellees and the instant case caused the writer of this opinion to indulge in some dicta in the opinion on the former appeal. 70 South. 166.[1] Contrary to the present holding and decision, being evidently misled by those same dicta, the trial judge gave the affirmative charge in favor of the defendants on this trial. As we have heretofore shown, these expressions in the opinion on the former appeal, to the effect that the remaindermen should have brought suit against adverse claimants during the life of the mother or life tenant, and that, failing so to do, they would be barred

[1] 195 Ala. 22.

as to their estate in remainder, no less than as to their estate during the life of the mother, were dicta, because on that appeal the case was actually and properly decided upon an agreement between counsel which precluded the plaintiffs (appellees then, but appellants now) from any right to recover in ejectment, no matter what construction was put upon the will.

Moreover, the court, on the former appeal, expressly declined to pass upon the question of merger; but, notwithstanding this, there are dicta in that opinion which, of necessity, presuppose that a merger was effected by virtue of the will now construed, and notwithstanding we then adopted the construction of the will theretofore placed upon it by this court in the case of Kidd v. Borum, supra.

[10] As there was no merger of the life estate and the remainder, the latter estate could not be acquired by adverse possession pending the life estate, and as the life estate terminated less than 10 years before the bringing of this suit, neither appellees nor those under whom they claim title could possibly have acquired title as to the remainder, as against these remaindermen or those claiming under that title. Kidd v. Borum, supra, 181 Ala. 162, 61 South. 100, Ann. Cas. 1915C, 1226; Jackson v. Elliott, 100 Ala. 669, 13 South. 690; Winters v. Powell, 180 Ala. 425, 61 South. 96; Pendley v. Madison, 83 Ala. 484, 3 South. 618; Robinson v. Allison, 124 Ala. 325, 27 South. 461; Hall v. Condon, 164 Ala. 393, 51 South. 20.

Adverse possession, however long continued, cannot defeat a vested remainder, during the existence of the life estate. Gindrat v. Railway Co., 96 Ala. 163, 11 South. 372, 19 L. R. A. 839.

There is no privity between tenants for life and vested remaindermen; the possession of the former cannot be adverse to the latter. Id.

Where the owner of a life estate has lost it by adverse possession, the remainderman cannot recover during the life of the life tenant. McMichael v. Craig, 105 Ala. 382, 16 South. 883.

The possession of a life tenant cannot be adverse to that of a remainderman. Pickett v. Pope, 74 Ala. 122.

During a life estate, there can be no adverse holding against a remainderman. Gindrat v. Railway Co., supra.

A life tenant in possession does not hold adversely to the remainderman. Caperton v. Hall, 118 Ala. 265, 24 South. 122.

[11] As the appellees (defendants below) showed or claimed no title as against the remainder, except that acquired by adverse possession; and ten years had not elapsed between the termination of the life estate and the bringing of this suit, they showed no right to recover in ejectment.

On the other hand, the plaintiffs (appellants here) showed a perfect title, back to

the government of the United States, unless it had been cut off or defeated by adverse possession; and, as we have shown, this was not done. It follows that the affirmative charge should have been given for the plaintiffs.

It will no doubt appear, from a casual reading of the opinion in this case on the former appeal, in connection with this opinion, that the two decisions are diametrically opposed; but on close examination it will be found that the decisions are not antagonistic; that there simply intervened dicta contrary to the decision in either case. While the trial court, on the first trial, gave the affirmative charge for the plaintiffs—and, as we now hold, correctly gave it—we were forced, on the appeal from that trial, to hold this action of the court to have been error, because of an agreement of counsel which rendered the giving of the charge erroneous no matter what construction should be placed upon the will. That is, it was agreed between counsel that the defendants had acquired title by adverse possession for 21 years, or that the evidence showed that fact. If such had been the fact, that, of course, was an end of the suit of ejectment. It now appears that the possession of defendants was not, and could not have been, adverse to the plaintiffs until the death of their mother, the life tenant, which occurred less than 10 years before this action was brought.

Reversed and remanded. All the Justices concur.