MOORE, Judge,
dissenting.
I respectfully dissent.
In the proceedings below, Camden Clayton, the grandson of Estellene Clayton (“Ms. Clayton”), removed the probate proceedings relating to Ms. Clayton’s estate to the Etowah Circuit Court (“the trial court”). Before the removal, it was established that, in her will, Ms. Clayton had named James Clayton, her son and Camden’s father, as the administrator of her estate and that Ms. Clayton had devised certain real property (“the property”) to James and Camden as joint tenants with *656 the right of survivorship. Upon removal, Camden requested the trial court to resolve the issue whether, based on his status as a joint tenant with the right of survivorship, he had the right to share in the royalties from a mining lease relating to the property.[3] The trial court initially ordered James to pay the royalties to the clerk of the court, but later, after an ore tenus hearing, it entered a judgment awarding Camden one-half of the royalties of the mining lease dating from the death of Ms. Clayton and into the future.
The evidence from the brief hearing conducted by the trial court indicates that, at some point in the late 1990s, James leased a portion of the property from Ms. Clayton.[4] Subsequently, on December 10, 1999, James entered into a limestone and sandstone mining lease with Blount Springs Sand & Gravel Co., Inc. (“Blount Springs”), relating to the property. Thereafter, James received annual and monthly mineral royalties from Blount Springs as specified in the mining lease. James testified that the mineral royalties constituted his sole source of income, so he would daily supervise the mining operations conducted by Blount Springs on the property. James did not share the royalties with Ms. Clayton during her lifetime, and he did not remit any payments to her estate after her death on July 28, 2009.[5] At some point in 2009, before the death of Ms. Clayton, James renewed his lease on the property, and the lease was set to expire at some point in 2019.
The trial court evidently concluded that Camden, by virtue of his inheritance of a joint interest in the property, obtained a right to share equally in the royalties from the mining lease. The main opinion affirms that judgment on the theory that James’s lease terminated upon the death of Ms. Clayton, reasoning as follows:
“Ms. Clayton’s reversionary interest in the fee and James’s tenancy interest vested in James when he and Camden inherited the property from Ms. Clayton as joint tenants. Accordingly, James’s lease was destroyed under the doctrine *657 of merger. See Whigham v. Travelodge Int'l, Inc., 349 So.2d 1078, 1085 (Ala.1977) (citing McMahan v. Jacoway, 105 Ala. 585, 17 So. 39 (1894); Otis v. McMillan & Sons, 70 Ala. 46 (1881); and Martin, Bradley & Co. v. Searcy, 3 Stew. 50, 52 (1830)); see also Welsh v. Phillips, 54 Ala. 309, 316 (1875) (‘The general rule of law is, that when a greater and less, or a legal and equitable estate, meet and coincide in the same person, they are merged, the one drowned in the other.’). Holding otherwise would result in the absurdity our supreme court warned against in Otis, 70 Ala. at 59: ‘There can be no greater absurdity, than to place [a man] in the relation of being his own landlord, and his own tenant, at one and the same time; bound himself to pay, and to receive rent.’ ”
75 So.3d at 653. The main opinion further concludes that, once James’s lease was destroyed, James and Camden, as joint owners of the leased property, were entitled to share in the proceeds of the mining royalties equally. 75 So.3d at 653.
I respectfully disagree. Most of the cases cited in the main opinion involve fact situations in which, by one form of conveyance or another, a lone tenant acquires in his or her individual capacity a fee-simple interest in property that is subject to a lease. The rule of law applicable to that situation is that, when the same person, holds both the lesser leasehold interest and the greater freehold interest, the lease is extinguished. See Whigham v. Travelodge Int'l, Inc., 349 So.2d 1078, 1084 (Ala.1977) (noting that, when lone tenant purchases leased property at a foreclosure sale, his or her new ownership of the freehold estate destroys the lease); McMahan v. Jacoway, 105 Ala. 585, 588, 17 So. 39, 39 (1894) (holding that a sublease merged into the lease when individual sublessee purchased lease from individual sublessor); Otis v. McMillan & Sons, 70 Ala. 46, 49 (1881) (stating the general rule that, when an individual becomes both landlord and tenant, the lease is destroyed by merger); and Welsh v. Phillips, 54 Ala. 309, 311 (1875) (stating that merger doctrine applies when the “same person” holds greater and lesser interest in same property). The fact situation in Martin, Bradley & Co. v. Searcy, 3 Stew. 50 (1830), is slightly different because, in that case, the owner of the fee-simple interest in the property sold the property to his tenants, plural. However, the same result inured. In Martin, Bradley & Co., the court held that, when the transfer of ownership resulted in the tenants owning both the freehold estate and the leasehold estate, the doctrine of merger extinguished the leasehold interest because the same persons cannot hold both interests. 3 Stew, at 52. The holdings in the foregoing cases are consistent with the common law as stated in the current Corpus Juris Secundum, which describes the necessary elements for merger as
“[t]wo or more distinct estates of greater and lesser rank; a valid greater estate; a meeting of the estates in one person or class of persons; coincidence in time of meeting; absence of intervening estates; and a holding of the estates in the same right.”
31 C.J.S. Estates § 156 (2008).
In this case, the same persons have never held and do not hold both the freehold interest and the leasehold interest in the property at issue. Upon Ms. Clayton’s death, pursuant to the terms of her will, her freehold interest in the property fell to James and Camden as joint tenants with rights of survivorship. However, that freehold interest remained subject to the leasehold interest, see Kellum v. Balkum, 93 Ala. 317, 9 So. 463 (1891), and Kelly v. *658 Kelly, 250 Ala. 664, 35 So.2d 686 (1948) (holding that death of lessor does not terminate lease, but passes freehold estate to heirs subject to lease), which was vested solely in James. Hence, the entire basis for the merger doctrine, the coincidence of ownership of the freehold estate and the leasehold estate in the exact same person or persons, does not exist in this case.
In Sisson v. Swift, 243 Ala. 289, 9 So.2d 891 (1942),[6] the court recognized that, despite the merger doctrine, one could act both as a trustee and a beneficiary of a trust when the trust also benefited others. 243 Ala. at 297, 9 So.2d at 898. Sisson apparently recognizes the common-law rule that the doctrine of merger depends upon a complete identity of ownership in both the greater and the lesser estates so that any deviation prevents a merger of estates. Extending the reasoning in Sis-son to the present factual situation, Alabama law should recognize that a merger of estates does not occur when a lone tenant under a lease acquires ownership of the freehold estate as a joint tenant with another.
Although Alabama law has not directly addressed that point, the New Mexico Supreme Court denied application of the merger doctrine in circumstances almost identical to those at issue in this case. In Tri-Bullion Corp. v. American Smelting & Refining Co., 58 N.M. 787, 277 P.2d 293 (1954), American Smelting acquired a lease allowing it to mine certain real property. American Smelting later acquired fee-simple ownership of the same real property as a tenant in common with Tri-Bullion. The New Mexico Supreme Court held that the cotenancy did not extinguish the lease. The court stated:
“In the instant case we are of the opinion and so hold that there was no merger because the same party never became the owner of the larger (fee) and of the smaller (leasehold) estates in this property. We deem this situation similar to the following: A, the owner of a building, leases office space to B, the tenant; B, the tenant, and C, a third party, purchase A’s interest as owner of the building. The doctrine of merger does not apply to kill B’s lease. 51 C.J.S., Landlord and Tenant, § 257, p. 894; Patterson v. United Natural Gas Co., 263 Pa. 21, 105 A. 828 [(1919)]; Vucinich v. Gordon, 51 Cal.App.2d 434, 124 P.2d 868 [ (1942) ].”
Tri-Bullion Corp., 58 N.M. at 794, 277 P.2d at 297. Based on Sisson, and the basic principles of the merger doctrine, it appears that, if our supreme court were addressing this case, it would use the same reasoning and reach the same holding as did the court in Tri-Bullion.
The main opinion points out that the cotenancy at issue in Tri-Bullion differs from the joint tenancy with right of surviv-orship at issue in this case. Although I recognize that distinction, I do not believe it compels a different result. The principle to be derived from Tri-Bullion and Sisson is that merger occurs only when a complete identity of ownership concurs in two estates in the same property. See First Alabama Bank of Tuscaloosa, N.A. v. Webb, 373 So.2d 631, 637 (Ala.1979) (“Sisson described the doctrine of merger in terms of the same person owning both the legal and equitable estates.”). The *659 characterization of the ownership rights may make a difference when the owner is the same, but that factor does not control when the identity of the owner or owners of the two estates differs. The main opinion does not cite a single case in which any court has held that a lease is extinguished upon the lessor’s acquiring the property along with another as a joint tenant with the right of survivorship. It would seem such a holding would invalidate many presently existing business relationships by which property is leased by one joint tenant to or from all joint tenants.
At any rate, even if the joint tenancy with a right of survivorship somehow could be viewed as a unification of the freehold estate and the leasehold estate in the same person, the doctrine of merger would not apply. Our supreme court has long recognized that the common-law rule of merger is highly disfavored and will not be applied rigorously when to do so would be to the disadvantage of the prior owner of one of the estates. Kidd v. Cruse, 200 Ala. 293, 296, 76 So. 59, 62 (1917). In Kidd, the court surveyed the law in other jurisdictions in order to declare Alabama law on the doctrine of merger. The present state of the law is best summarized as follows:
“It was an inflexible rule at common law that a merger always took place when a greater and a lesser estate met in the ownership of the same person without any intermediate estate, but modernly the doctrine of merger is not favored either at law or in equity. Consequently, the courts will not compel a merger of estates where the party in whom the two interests are vested does not intend such a merger to take place, or where it would be inimical to the interest of the party in whom the several estates have united ..., nor will they recognize a claim of merger where to do so would prejudice the rights of innocent third persons. 19 Am.Jur. 589, Estates, § 136; 21 C.J. 1034, Estates, § 234; 31 C.J.S., Estates, § 124.”
Mobley v. Harkins, 14 Wash.2d 276, 281-82, 128 P.2d 289, 291 (1942) (emphasis added). See also IP Timberlands Operating Co. v. Denmiss Corp., 726 So.2d 96, 108-09 (Miss.1998) (“ ‘ “Termination does not, however, always follow the acquisition of the landlord’s title by the tenant. The question whether or not a merger affecting a termination of the lease results depends on what will best serve the interests of justice and the intention of the parties.” ’ ” (quoting Zouboukos v. Costas, 232 Miss. 860, 870, 100 So.2d 781, 785 (1958), quoting in turn 51 C.J.S. Landlord and Tenant § 94, p. 666)).
In this case, James obtained a lease from Ms. Clayton, which allowed him to enter the mining lease that has generated his sole source of income for over 10 years and which he was relying upon to continue to generate income for the next 8 years. If the court applied the merger doctrine mechanically so as to terminate James’s lease, the mining lease would attach to the property and James would be required to share one-half of the mineral royalties with Camden as a joint tenant. See Faust v. Faust, 251 Ala. 35, 37, 36 So.2d 232, 233 (1948). In other words, James would experience a loss of half of his income through no action of his own. Because that result would be inimical to James’s interest, the doctrine of merger cannot be applied.[7]
*660 Because, in the present case, the leasehold estate did not merge into the freehold estate upon the devise of the property to James and Camden as joint tenants, the leasehold estate remains the separate estate of James, as does the mining lease, which was entered into solely between James and the mining company. Moreover, even if the doctrine of merger could be applied, it would be inequitable to do so under the facts of this case. Thus, James, alone, is entitled to the royalty payments unless the trial court had some other valid reason for apportioning those royalties.
Having reviewed the record and the briefs of the parties thoroughly, I do not find any legal or factual justification supporting the trial court’s decision that James and Camden are entitled to equally share in the royalties. I would reverse the trial court’s judgment and remand the case to the trial court with instructions to vacate that portion of the judgment awarding Camden one-half of the past and future royalties from the mining lease.
BRYAN, J., concurs.

. In his appellee brief, Camden argues other theories for why he should receive a share of the royalties; however, he did not present any of those theories to the trial court and did not notify James of his reliance on those theories. Although ordinarily we can affirm a judgment on any valid legal ground presented in the record, we cannot take that action when to do so would violate the due-process rights of the opposing party. Liberty Nat’l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013, 1020 (Ala.2003).

. James did not introduce a copy of the written lease at trial, but he did attach a copy of the written lease to his motion to alter, amend, or vacate. Because the record is unclear as to whether the trial court considered that lease, I do not rely on its contents on appeal. See J.S.M. v. P.J., 902 So.2d 89, 91 n. 2 (Ala.Civ.App.2004) (this court refused to consider an affidavit submitted in support of a valid postjudgment motion when it was unclear whether the trial court had considered that evidence).

.Early in his testimony, in response to a question regarding whether he was collecting the royalties remitted after the death of Ms. Clayton as the personal representative of her estate, James responded: "Yes, I have, due to my contract with [the mining company].” However, James later clarified that rather ambiguous response by stating that he had retained the royalties on his own behalf and had not remitted any payments to the bank accounts of the estate. The whole of his testimony indicates that James never acknowledged that any part of the royalty payments belonged to the estate; rather, he maintained throughout the proceedings that he was the rightful owner of the royalties unless the court ruled otherwise. See McGough v. G & A, Inc., 999 So.2d 898 (Ala.Civ.App.2007) (requiring court to review the entirety of a witness’s testimony to determine its substantialness). Thus, I reject Camden's contention that James admitted that the estate had an interest in the royalty payments.

. The main opinion questions my reliance on Sisson because it is a trust case. As illustrated by Sisson, the principles of the doctrine of merger apply equally to coincidental ownership in legal and equitable estates in property. Thus, although this case involves the merger of greater and lesser estates in real property, that distinction does not affect the relevancy of the holding in Sisson on the issue whether Alabama law recognizes merger when the ownership of two estates in the same property varies.

. I recognize that James has not specifically argued this point. However, I point out the inequity of applying the merger doctrine in order to show that, based on the record before us, the doctrine does not present a valid legal ground for affirming the judgment of the trial court.