# Kidd, *et al. v.* Borum.

## *Bill to Quiet Title.*

(Decided January 16, 1913.  61 South. 100.)

1. *Wills; Construction; Intention of Testator.*—A will must be considered as a whole for the purpose of ascertaining the intention of the testator.

2. *Same; Estate Devised.*—Where a testator, who had been twice married, declared in his will that the children of his first marriage had by way of advancement, received a part of his estate, and that he had by a deed conveyed to the second wife and her children, by means of trustees with power to demand of his executors the bequest therein, and gave to his second wife and her children all his real estate in a certain county, and personal property for the use of his wife and her children, for the life of the wife with remainder to the children, and the deed mentioned conveyed to trustees other land in trust for the support of the wife and her children during her life, with remainder to her children, and directed the trustees to demand and recover of his executors any gift to the wife and the children made by the will, the real estate devised not having been conveyed to the trustees, the will when considered in connection with the deed, made the wife and her children at the time of testator's death tenants in common of an estate for life, with a remainder in fee of the whole estate to all of her children.

3. *Same; Instruments Referred to; Effect.*—Where a will, executed immediately after the execution by testator of a deed of trust which was duly acknowledged and recorded, referred to the deed, the deed, though not probated as a part of the will, could be considered to aid in the construction of doubtful provisions of the will as a part of the attendant circumstances to which the court could look in arriving at the intent of the testator.

4. *Trusts; Failure; Lack of Trustee.*—A trust properly created will not be permitted to fail for the lack of a trustee.

5. *Life Estate; Conveyance by Life Tenant.*—A deed by a tenant in common for life purporting to convey an estate in fee will be given effect as a conveyance of the grantor's interest in the estate.

6. *Same; Right of Remaindermen.*—Where a tenant in common for life conveyed the premises by deed purporting to convey a fee, and the grantee entered into possession claiming exclusive title, and he and those claiming under him continued in the actual and exclusive possession for thirty years, the tenants in common in remainder were not barred by limitations during the lifetime of the tenant in common for life.

7. *Adverse Possession; Conveyance by Life Tenant; Effect.*—Where a grantee in a deed purporting to convey the fee, but executed by a tenant in common for life, went into the possession, and held the

[Kidd, et al. v. Borum.]

same for ten years, notoriously and exclusively without recognition of the title of any other person, and those claiming under him continued such possession for more than twenty years, the grantee and those claiming under him held such possession as ripened into a title after ten years, as against strangers.

8. *Same; Acts of Ownership; Notice.*—Customary acts of ownership by one in possession under a deed purporting to convey the fee was sufficient to impute notice to all not claiming in privity with the possessor.

9. *Tenancy in Common; Conveyance by; Possession of Grantee; Effect on Co-Tenant.*—The possession of a tenant in common, without more, does not operate as a dis-seisin of the other co-tenants; to operate as a dis-seisin there must be a repudiation of the rights of the co-tenants, and a claim to exclusive ownership, brought home to their knowledge.

10. *Same.*—The knowledge or actual notice of a conveyance by a tenant in common to a stranger purporting to convey the entire estate, and possession taken under such conveyance, starts the running of the statute against the co-tenant, and actual, notorious and exclusive possession by the grantee establishes title as against them.

11. *Same.*—The burden of proving actual knowledge or notice to tenants in common of the execution of a conveyance by one co-tenant purporting to convey the whole estate, and possession and claim of ownership by the grantee under such conveyance, rests on such grantee, and those claiming under him.

12. *Same; Laches.*—Where a tenant in common for life conveys the fee and the grantee entered into possession claiming the fee, and he and those claiming under him hold the actual, notorious, continuous, and exclusive posession for more than thirty years, the co-tenants for life were deprived of their interests.

APPEAL from Shelby County Court.

Heard before Hon. E. S. LYMAN.

Bill by Lula C. Borum against Douglas W. Kidd and others to quiet title. From a decree for complainant, defendants appeal. Reversed and rendered.

The agreed statement of facts is as follows: "That John W. Kidd died in Shelby county, Ala., in 1865 Anno Domino, being at the time of his death a resident thereof. That he was at the time of his death the owner in fee of the lands described in the second paragraph of the amendment to the bill. That the said John W. Kidd left a last will and testament, in which he disposed of said lands. That said last will and testament was fully probated before the judge of the probate court of Shelby

county, Ala., on, to wit, the 17th day of August, 1866, and recorded in the office of said judge of probate in the manner prescribed by law. Record 'H' at page 685. A true and correct copy of said will, except punctuation marks, is attached to the answer of the respondents as an exhibit thereto, and marked 'A.' That the executors of the said will named therein failed to qualify or to perform any of the duties or exercise any of the privileges imposed upon or granted to them under said will. That letters of administration cum testamento annexo were issued upon said estate of John W. Kidd, but that said lands were not subjected to the payment of decedent's debts if there existed such. That Mary Georgiana Kidd, the wife of John W. Kidd, mentioned and provided for in said will is still living. That Douglas W. Kidd, John M. Kidd, James W. Kidd, and Anna Philida Kidd were the children of John W. Kidd and his said wife, Mary Georgiana Kidd, mentioned and provided for in the third item of said will, and were all in existence at the time of the testator's death. That one of said children, John M. Kidd, was born after the making of the will, but before the death of the testator. That said children were infants of tender years at the death of the said John W. Kidd. That two of said children named in said will, James W. Kidd and Anna Philida Kidd, are dead. That Douglas W. Kidd and John M. Kidd are still living, also the wife, Mary Georgiana Kidd, has married again. That Anna Philida Kidd, one of the deceased devisees under said will and aforementioned, died unmarried and without issue leaving surviving her three brothers aforesaid and her mother, Mary Georgiana Kidd. That she died on, to wit, the year 1887. That James W. Kidd died on the 11th of April, 1909, leaving three children, Thomas J. Kidd, Meeda T. Kidd, and James M. Kidd. That he was

also survived by his brothers aforementioned, Douglas
W. Kidd and John M. Kidd, and his mother, Mary
Georgiana Kidd. That at the time of the making and
execution of the said last will and testament the 8th
day of November, 1858, and on the same day, the said
testator John W. Kidd made and executed a trust deed,
which said trust deed is referred to and mentioned in
the said will, and said will is mentioned and referred
to in said trust deed. That said trust deed purports to
grant certain property therein mentioned. That said
trust deed is made an exhibit to this statement of facts
and a part of this statement of facts as fully as if incor-
porated therein, and as evidence in said cause. Said
trust deed is marked 'Exhibit I,' and hereto attached.
That the executors mentioned and named in the last
will and testament of the said John W. Kidd heretofore
referred to did not make any conveyance to the trustees
mentioned therein as they were directed to do by said
will. That said executors failed to qualify or do any
act relative to the estate of the testator, John W. Kidd.
That the administrators cum testamento annexo did not
make any attempt to convey said land to the trustees,
nor was there any conveyance of any land owned by the
testator to the trustees mentioned in said will, and the
trustees never took possession of or exercised any con-
trol over the land in controversy or any other land of
the testator. That Mary Georgiana Kidd went into
possession of said land, and held same for and up to
the time that she conveyed same to one Robert L. Flip-
pin. That she held said land for about 15 years after
the death of the testator, John W. Kidd, and under said
will. That about the year 1880 Mary Georgiana Kidd
made and executed a warranty deed to Robt. L. Flippin
of the lands here in controversy. That said deed was
valid in so far as it conveyed any right, title, or interest

that Mary Georgiana Kidd had in and to said land. That Robert L. Flippen under said deed held said land for about 10 years, when he conveyed same to his daughter, Lula C. Borum, the complainant herein. That Lula C. Borum, together with her husband, has held said land under deed since its execution for a period of more than 20 years. That the deed given by Mary Georgiana Kidd to Robert L. Flippin purports to convey a fee, and that said deed was valid upon its face. That the deed given by Robert L. Flippin to Lula C. Borum purported to convey a fee, and was valid upon its face. That both of the deeds just referred to purported to be warranties and as such were valid upon their face. That Robert L. Flippin under his deed from Mary Georgiana Kidd went into immediate possession and held said land for 10 years in actual, notorious, and exclusive possession, and during such time did not recognize or admit the title of the respondents or any other party, but, on the contrary, denied that any person whatsoever had any rights in and to said land. That Lula C. Borum has been in actual, notorious, continuous, and exclusive possession of the land during the time since she went into possession more than 20 years prior to the filing of her bill, and that during said time she has not recognized or admitted any right, title, or interest of the respondents. That Robert L. Flippin and Lula C. Borum have paid the taxes upon said land during the time aforementioned. That the two deceased devisees, James W. Kidd and Anna Philida Kidd, died intestate, and left no debts. That the original will and trust are offered in evidence as a part of the facts of the case and evidence of the cause. That said original will and trust deed be received in evidence as if fully incorporated in this statement of facts. That the copy of the will (Exhibit A) attached to the answer of the respondents is

correct, except that there are no punctuation marks in the third item of the will beginning with the words, 'I hereby give and bequeath unto my said beloved wife' and down through the said item of said will. That a true and correct copy of the trust deed made by John W. Kidd contemporaneously with the execution of the will is hereto attached·as an exhibit to and as a part of this statement of fact. That same may be considered as the original trust deed. That same is marked 'Exhibit I.' That, if the original will and trust deed are not produced, the copies attached may be received as evidence the same as the originals, with the above qualifications as to the punctuation of the will. That the respondents as devisees under said will, and as heirs at law of the deceased devisees in said will, claim a valid and subsisting vested remainder under said will to the lands in controversy."

The following is the deed of trust: "This indenture made and entered into this 8th day of November in the year of our Lord 1858, between John W Kidd, of the first part and John M. Kidd and William Singleton, of the second part, all of the county of Shelby, state of Alabama, witnesseth: That whereas, the said John W. Kidd, the party of the first part, has been twice married and has children by each marriage; that his children by his first marriage have all grown up and left him, and he has by way of advancement, given off to them a considerable portion of his estate, and is desirous to provide for his present wife and children by her. Now, for and in consideration of the love and effection which the said party of the first part has and bears for his present wife, Mary Georgiana Kidd, and my sons by my said beloved wife, William Douglas, James White, and daughter Anna Philida, and the further consideration of five dollars by the parties of the second part to me, the party

of the first part, in hand paid, the receipt whereof is hereby acknowledged, the said party of the first part has sold and does hereby sell and convey unto the said parties of the second part the following described lands and property, to wit: All of my home tract of land lying near and adjoining the town of Harpersville, and embracing section (32) in township (19) and range (2) east, except a small portion sold off as town lots and the graveyard and forty acres in section four, and forty acres in section five, and seventy-six acres in section twenty-eight, and seventy-six acres in section thirty-three, all in township 20, range 2 east; my entire home tract containing eight hundred and sixty acres; and the following named negro slaves, to wit: a negro woman, Martha, about 30 years old, and her five children, William about eleven years old, Martha about eight years old, Elbert about six years old, Sallie about four years old, and Smith about three years old. Also Mark, a man about 30 years old, and Early about 17 years old, and Charles about 15 years old, and Franklin about 20 years old, and Isiah about 22 years old, and Emma about 16 years old, and Elijah about 60 years old. To have and to hold in trust as follows, to wit: in trust for the use, support and maintenance of said beloved wife Mary Georgiana, and children William Douglas, James White, and Anna Philida, during the natural life of my said wife, remainder after her death in absolute right to my said children above named, and in the event my said wife should have any other child, or children by her present marriage, that such child or children born of my said wife by her present marriage, that it or they be made equal with my children above mentioned in said property, but in no event said property or any part thereof, to go to any future husband, should my said beloved wife have such future husband,

or to the children of such future husband, so as however not to restrain her of the use of the said property during her natural life. In further trust that I be permitted to retain the use of said land and negroes during my natural life. I also hereby authorize and empower the said parties of the second part and in the event they or either of them should die, resign this trust, or be otherwise removed from the trust herein created, their successors to demand and recover of my executors any legacy or bequest which I may give to my beloved wife and children above named in my last will and testament and when received of my executors or administrators to be held by said trustees for my said wife in the same manner and under the same trust as above provided. John W. Kidd. Attest: R. L. Flippin, S. Leeper."

The following is the will:

"I, John W. Kidd, of the county of Shelby state of Alabama, of sound mind and memory, though advanced in age and mindful of the uncertainty of life, do make and publish this my last will and testament. And first I commend my soul to God, who gave it, and my body to the dust to be buried as my friends may choose in a Christian way and manner; second, I desire that all my just debts and funeral expenses be paid out of any money which may be on hand at my death, or out of the first means which may come to the hands of my executors out of my estate; third, whereas, I have in the providence of God been twice married and have children by each marriage. My first children have all left me and have, by way of advancement, received a part of my estate hereinafter more particularly set forth, and I have by deed heretofore conveyed to my beloved wife, Mary Georgiana, and my children by her, through John M. Kidd and William Singleton, trustees, and in that

deed given to said trustees power and authority to demand of my executors such legacy or bequest as I might, in my will, give to my said beloved wife and children in said deed mentioned now, hereby ratifying and confirming said deed, and as the bequests therein alluded to, I hereby give and bequeath unto my said beloved wife whatever real estate I may die seized and possessed of, situated in Shelby county; and four mules and one horse to be selected by said John M. Kidd and William Singleton out of my stock of mules and horses at my death, four cows and calves, thirty hogs, selected in like manner, and four beds and furniture to be selected by my said wife, and direct that my executors convey to said trustees said land, if any such be owned by me at my death, and deliver to them all the above mentioned property for the use of my beloved wife, Mary Georgiana, and her children William Douglas, James White and Anna Philida, during the natural life of my said beloved wife, and at her death to our children forever. I also give to my beloved wife one buggy and harness and wagon. Fourth, I have heretofore given to my children, as follows: to my daughter Harriet McGraw to the value of $4987.00; to my daughter Marie Johnston to the value of $3374.00; to my daughter Louisa Gashell, $282.00; to my son Albert J. Kidd to the value of $4235.00; to my son William H. Kidd, to the value of $5512.00; to my son John M. Kidd, to the value of $2840.00; and design in my life time in my own way, to make my said children equal as to said advancements. Now it is my desire that my entire estate, not above bequeathed, of which I may die seized and possessed, be equally divided among my said sons and daughters mentioned in this section, and here enjoin it upon my executors hereinafter appointed to divide my said property so left after taking out the foregoing specific be-

quests, so as, first, if I, in my life time, shall have failed
to equalize such advance, then to equalize said advances,
and then divide said remainder equally between my sons
and daughters named in this fourth section of this my
will, who may be living at my death, and to the children
of such as are or may be dead, the share due their
parents. Fifth, I hereby appoint my sons, Wilson M.
Kidd, and John M. Kidd my executors of this my last
will and testament, and hereby convey to them and in-
vest them, or such of them as may qualify with full
power to do all things necessary to carry out this my
last will and testament; and I now publish this as my
last will and testament in the presence of," etc.

KIDD & DARDEN, and W. S. THORINGTON, for appel-
lant. The Code of 1852, was in force when the deed
made by the testator to the trustees was executed, and
section 1329, expressly authorized such a reservation.
The will and the deed being executed contemporane-
ously they necessarily shed light, the one on the other,
and embodied the intent and purposes of the grantor,
and hence, will be considered together.—*Matthews v.
McDade,* 72 Ala. 377. There were two estates created,
one for and during the life of the mother, and another
an estate in remainder to her children, and they took
jointly and equally as tenants in common for and dur-
ing the life of the mother subject to open and letting in
of any child afterwards born with the possession of the
life estate postponed according to the reservation in
the deed.—*Chandler v. Jost,* 81 Ala. 411; *Blakney v.
Dubose,* 167 Ala. 627. There could be no merger where
there is an outstanding life estate.—6 Mo. App. 297; 7
Allen. 196; 2 Washburn on Real Property, 368. To
hold that the life estate of the children were merged
or drowned in their remainder in fee would not only

do violence to the intent of the testator, but be equiva-
lent to holding that the children had no present right
of possession, and have had none since the death of the
grantor.—Authorities next above. In the vested re-
mainder the children took jointly, equally and immedi-
ately, subject to the rights of children afterwards born
with the right of possession of the fee postponed until
the death of the mother, or the termination of the life
estate.—*Dunn v. Bank of Mobile*, 2 Ala. 152; *Chandler
v. Jost, supra; Sullivan v. McLaughlin*, 99 Ala. 60;
*Blakeny v. Dubose, supra.* It is immaterial whether the
trust created by the deed created an active trust or a
naked trust.—*McBrayer v. Cariker*, 64 Ala. 50. It is
absolutely clear that the mother had only a life estate
jointly with her said children in the property, and that
was all she could sell.—*Chandler v. Jost, supra;* Sec.
1313, Code 1852; *Pendley v. Madison*, 83 Ala. 484. Her
grantees then became tenants in common with the chil-
dren in the life estate, and as such went into possession
of the whole property, and not otherwise.—*Coleman v.
Stewart*, 170 Ala. 255; *Fielder v. Childs*, 73 Ala. 567.
Hence, her grantee, and those holding under her could
not hold adversely to the remainder interest of the re-
spondent children, and the remaindermen were under
no duty to bring any suit to protect their remainder
interest until the death of the life tenant, who is shown
by the facts to be still in life.—Sec. 3420, Code 1907;
*Pope v. Pickett*, 74 Ala. 122; *Blakeny v. Dubose*, 167
Ala. 627. If the agreed statement of facts show an
adverse holding by Flippen and his successors in title
against respondents in respect to their life interest,
that interest may be barred both by statute and pre-
scription, but cannot bar the remainder interest while
the life tenant is alive.—*Blakeny v. Dubose, supra.* As
to what constitutes an ouster between tenant in com-

[Kidd, et al. v. Borum.]

mon, see *Layton v. Campbell,* 155 Ala. 220; *Farley v. Nagle,* 119 Ala. 622; *Ashford v. Ashford,* 136 Ala. 631; *Gulf Red Cedar Co. v. Crenshaw,* 148 Ala. 343.

BURGIN, JENKINS & BROWN, for appellee. The bill was brought under section 5443, et seq., Code 1907, and the statutory averments are properly pleaded.—*Adler v. Sullivan,* 115 Ala. 582. The principles announced in the following cases apply.—*Woodstock Co. v. Fullenwider,* 87 Ala. 586; *Robinson v. Pearce,* 111 Ala. 273, but conceding that time has not foreclosed all respondent's rights, the will conveys a fee to the wife.—Sec. 1299, Code 1852. If it be granted that the children had a legal estate, then it amounted to a tenancy in common, and the children are barred.—*Dunn v. Bank,* 2 Ala. 162; *McQueen v. Logan,* 36 Ala. 21; *Slaton v. Blount,* 93 Ala. 275; *Moore v. Lee,* 105 Ala. 435. The description of the property devised is indefinite, and the gift must fall.—*Zundel v. Baldwin,* 114 Ala. 328. The land did not pass under the will.—*Carter v. Carter,* 39 Ala. 579. If the legal title passed to the trustees, the trustees are barred, and hence, the respondents are also barred.—*Haney v. Legg,* 129 Ala. 619. There is an additional brief filed without signature insisting that the above case is fictitious and moot, and should not be considered by this court.—140 Ala. 458; 156 Ala. 625; 169 Ala. 644; 17 U. S. 93; 12 Law. Ed. 1067; 12 L. R. A. 820; 2 Cyc. 533.

SAYRE, J.—In 1911 appellee filed her bill under the statute to settle the title to lands held by her. The cause was submitted on proof of the will of John W. Kidd, back to whom all parties trace their titles, a certain deed of trust executed by him, and an agreed statement of facts, all which, so far as necessary to an under-

standing of the case, will be set out elsewhere. From the decree defining and settling the respective interests of the parties defendants have taken this appeal.

As will appear, in 1858 John W. Kidd executed and delivered the deed purporting to convey to trustees, upon the trusts therein set down, certain lands other than those in controversy. On the same day, but following the execution of the deed, Kidd executed his will, which was duly probated after his death in 1865. This deed, which was duly acknowledged and recorded, though it was testamentary in that part which authorized the trustees therein appointed to demand and receive of executors to be appointed any legacy or bequest which the grantor might give to his wife and the children of his second marriage, was not probated as a part of the will. It cannot therefore be recognized as a substantive part of the will.—*Wood v. Mathews,* 53 Ala. 1. However, regard may be had for its disposition in the construction of doubtful provisions of the will as constituting a part of all those attendant circumstances to which the court will look in order to learn the true intent and purpose of the testamentary language used, though such provisions as may be clearly located and ascertained within the four corners of the instrument cannot be affected or changed by considerations aliunde. In part at least the instrument of first execution was not of testamentary character, for it operated in præsenti to pass title to the property therein described, though postponing possession, and was as to that title and its limitations not revocable. The nearness of the two acts to one another, their common purpose to make provision for the second wife of the grantor-testator and his children by her, and the reference of each to the other, lead the court, as far as may be without transgressing established rules of law for the transmission

[Kidd, et al. v. Borum.]

of property, to take them as one.—*Matthews v. McDade,* 72 Ala. 377. The will was not drawn by a skillful hand, and, standing alone, its provisions are to some extent contradictory and of doubtful import in respect to the estate conferred upon the widow. But, when considered in connection with the deed, it makes, in our judgment, the widow and her children at the time of testator's death tenants in common of an estate for her life *(Chandler v. Jost,* 81 Ala. 411, 2 South. 82), with the remainder in fee of the whole estate to all her children. These purposes and dispositions the testator intended and attempted to accomplish through the intervention of trustees. There was never any conveyance of the land in question to trustees; but whether the trust which the testator intended to create was a dry trust, or was of such character as to require activity and discretion of the trustees, equity will consider and treat the beneficial interest as having acquired the intended status in the first case because the trustees would have been useless incumbrances of the plan, in the second because no trust can be permitted to fail for lack of a trustee.

At one place in his will testator said: "I hereby give unto my beloved wife whatever real estate I may die seized and possessed of, situated in Shelby county." But the will must be construed as a whole, testator's intention being gathered from a consideration of all parts of it in connection, and in the forepart of the same sentence from which we have quoted above testator said: "Whereas I have in the providence of God been twice married and have children by each marriage. My first children have all left me and have, by way of advancement, received a part of my estate hereinafter more particularly set forth, and I have by deed heretofore conveyed to my beloved wife, Mary Georgiana, and my

children by her, through John M. Kidd and William Singleton, trustees, and in that deed given to said trustees power and authority to demand of my executors such legacy or bequest as I might, in my will, give to my said beloved wife and children in said deed mentioned now, hereby ratifying and confirming said deed, and as the bequests therein alluded to, I hereby give and bequeath," etc., using the language first above quoted. And he finished the paragraph with these words: "And direct that my executors convey to said trustees said land, if any such be owned by me at my death, and deliver to them all the above mentioned property for the use of my beloved wife, Mary Georgiana, and her children, William Douglas, James White, and Anna Philida, during the natural life of my said beloved wife, and at her death to our children forever." In the deed he had conveyed to the trustees named in the will a certain tract of land and other property, "To have and to hold in trust as follows, to wit: In trust for the use, support and maintenance of said beloved wife, Mary Georgiana, and children, William Douglas, James White, and Anna Philida, during the natural life of my said wife, remainder after her death in absolute right to my said children above named, and in the event my said wife should have any other child, or children by her present marriage, that such child or children born of my said wife by her present marriage, that it or they be made equal with my children above mentioned in said property, but in no event said property, or any part thereof, to go to any future husband, should my said beloved wife have such future husband, or to the children of such future husband, so as however not to restrain her of the use of said property during her natural life." And, finishing the deed, he authorized the trustees "to demand and recover of my executors any

legacy or bequest which I may give to my beloved wife
and children above named in my last will and testament
and when received of my executors or administrators
to be held by said trustees for my said wife in the same
manner and under the same trust as above provided."
That expression of the will, upon which appellee relies
as creating a fee in the wife either in the whole or in
a part of the lands devised, cannot be segregated from
the rest of the will without violating an elementary rule
of all interpretation, and so, considering the will as a
whole and having recourse to the deed for the solution
of doubtful provisions, we have reached the conclusion
stated above.

The deed of the widow, Mary Georgiana, under which
complainant holds and claims by mesne conveyance,
though it purported to convey the entire estate in fee
with covenants of warranty, was effective as a convey-
ance of her interest as a tenant in common for her life
only.—*Coleman v. Stewart,* 170 Ala. 255, 53 South.
1020; *Fielder v. Childs,* 73 Ala. 567; *McMichael v. Craig,*
105 Ala. 382, 16 South. 883; *Hall v. Condon,* 164 Ala.
393, 51 South. 20. And that is now the extent and
character of complainant's title, unless, by lapse of time
coupled with adverse claim, a larger interest has become
vested in her.

So far as concerns the term for the life of Mary Geor-
giana Kidd, who still survives, we think it has been lost
to defendants. There is nothing in the agreed facts to
indicate an assertion of title hostile to respondents prior
to the sale by the widow to Flippin in 1880. The agree-
ment is that "Flippin under his deed from Mary Geor-
giana Kidd went into immediate possession and held
said land for 10 years in actual, notorious, and exclu-
sive possession, and during such time did not recognize
or admit the title of the respondents or any other party,

but, on the contrary, denied that any person whatsoever had any rights in and to said land; that Lula C. Borum has been in actual notorious, continuous, and exclusive possession of the land during the time since she went into possession more than 20 years prior to the filing of her bill, and that during said time she has not recognized or admitted any right, title, or interest of the respondents; that Robert L. Flippin and Lula C. Borum have paid the taxes upon said land during the time aforementioned." These facts show a possession by complainant and Flippin hostile in its inception and exclusive during its continuance, such as would set the statute of limitations to running as against strangers and would ripen into title after 10 years. Customary acts of ownership are sufficient to impute notice to all not claiming in privity with the possessor. But the rule is that the possession of a tenant in common, without more, does not operate as a disseisin of cotenants, for in contemplation of law he holds for them.—*Fielder v. Childs,* 73 Ala. 567. To operate as a disseisin in such case there must be a repudiation of the rights of cotenants and a claim of exclusive ownership brought home to their knowledge; that is, there must be positive information of the facts, however informally communicated or acquired.—*Johns v. Johns,* 93 Ala. 239, 9 South. 419; *Ashford v. Ashford,* 136 Ala. 631, 34 South. 10, 96 Am. St. Rep. 82; *Palmer v. Sims,* 176 Ala. 59, 57 South. 704; *Lay v. Fuller,* 178 Ala. 375, 59 South. 609. Knowledge or actual notice of the conveyance by one tenant in common to a stranger purporting to convey the entire estate and amounting therefore to a repudiation of the trust relation incident to cotenancy, and possession taken under it, would put the statute in motion.—*Abercrombie v. Baldwin,* 15 Ala. 363. But the burden of tracing such knowledge or actual notice home to her

cotenants, and, in general, of proving that the title shown by her muniments, including the will, had been enlarged by an adverse holding or the doctrine of prescription rested upon complainant, and a reference to the agreed facts, in the light of the principles of law stated, will show that complainant has failed to sustain that burden. She has failed to bring home to defendants information of the adversary character of her possession.

But another contention, resting upon principles different from those obtaining in cases to which the statute of limitations applies, must be taken into account. For more than 30 years complainant and her immediate grantor have been in possession without any recognition of the rights of defendants. During that time, it is to be inferred, defendants have enjoyed no benefit of their ownership, and for more than 20 years they might have taken or claimed possession and upon denial of their rights might have maintained an action in their own name and behalf. This court has repeatedly held that the lapse of 20 years, without recognition of adversary right, or admission of liability, operates an absolute rule of repose. Many of the cases are cited in *Jackson v. Elliott,* 100 Ala. 669, 13 South. 690, where the question of the application of the doctrine of prescription to a case between tenants in common was put aside because not raised by the record in such form as to require consideration. A reading of these cases leads us to the conclusion that, as to the estate for the life of testator's widow, defendants have been barred by a failure for more than 20 years to assert their rights. In the meantime complainant and her immediate predecessor in title have been in the uninterrupted and unquestioned possession of the land and in the like enjoyment of its undivided usufruct without the slightest

recognition of the right now asserted by defendants. In such a case the court, for the repose of society, will presume any state of the title in order to maintain a status of parties and property so long allowed to remain undisturbed.

The estate in remainder must be disposed of on still different principles. As to that, defendants have never at any time been in a position to ask for any judgment or decree presently operative upon the possession of the property or the enjoyment of its usufruct. In such case laches cannot be predicated on the ground of mere delay because there can be no delay where there is no right to move. In such case the remainderman cannot be barred pending the life estate by the statute of limitations, nor is there field for the operation of the doctrine of prescription. See the cases cited in *Jackson v. Elliott, supra,* and our recent case of *Winters v. Powell,* 180 Ala. 425, 61 South. 96.

It follows that, as between the parties, complainant is entitled to an unincumbered estate in the entire property for and during the life of Mary Georgiana Kidd. As to the remainder, upon the birth of John M. Kidd, he became entitled to share equally with William, James, and Anna Philida, each taking a fourth. On the death of Anna Philida in 1887, intestate, unmarried, and without children, her undivided fourth in the remainder devolved under the statute then in force on her three surviving brothers, who thereupon became the owners of the entire interest in remainder in the proportion of an undivided one-third interest each. On the death of James W. in 1909 intestate, his third devolved upon his children Thos J., Meeda T., and James M., in the proportion of one-ninth each; and so the title stands at this time. In one particular the chancellor

[Peerson, et al. v. Danley.]

decreed differently; but a decree will be rendered here
in accord with the views expressed.

Reversed and rendered.

DOWDELL, C. J., and MCCLELLAN and SOMERVILLE,
JJ., concur.