155 So. 710

## MT. VERNON–WOODBERRY MILLS v. UNION SPRINGS GUANO CO.

### 5 Div. 906.

Court of Appeals of Alabama.
April 10, 1934.

Rehearing Denied May 8, 1934.

Denson & Denson, of Opelika, for appellee.

James W. Strother, of Dadeville, for appellant.

SAMFORD, Judge.

This case was brought by Union Springs Guano Company, as plaintiff, against Mount Vernon-Woodberry Mills, as defendant, and its purpose was to recover damages on account of the destruction by the defendant of a lien owned by the plaintiff on cotton.

The case was tried at Dadeville in March, 1932, before the court and a jury. On March 25 (or March 26), 1932, the jury returned into open court a verdict in favor of the plaintiff for $500, written on a piece of paper and signed by the foreman, being in these words: "We the jury find for the plaintiff and assessed the amount of $500.00. T. E. Downing, Foreman."

The verdict was read in open court, and thereupon the presiding judge, in open court, made the following bench entry on the docket: "3–25–32. J. & V for plaintiff, and assesses the damages at $500.00 T. E. Downing, Foreman."

On April 8, 1932, the defendant filed its motion for a new trial; the opening paragraph of said motion being in the following words: "Comes the defendant in the above styled cause and moves the court to set aside the *verdict of the jury and the judgment* and to grant to the defendant a new trial in said cause for the following reasons and on the following grounds, towit:"

There was no hearing on this motion within thirty days from the trial or within thirty days after March 26, 1932, but on or about June 13, 1932, this motion was taken up on a call of the docket at Dadeville, and at that time the judge entered on the motion docket the following: "This motion is continued for thirty days from June 20, 1932."

Before there was any hearing, the plaintiff filed a motion to enter a discontinuance of the defendant's motion for a new trial; the contention being that the motion for a new trial had not been heard by the court within thirty days from the time of the trial, and that no order of the court, continuing the hearing on the motion, had been made and filed in the cause within that thirty-day period.

There was a hearing on July 1, 1932, and that hearing was continued to July 15, 1932. It was shown without dispute on the hearing that on April 23, 1932, the judge who heard the case at Dadeville signed an order at Opelika, continuing the hearing on the mo-

tion for a new trial for thirty days from April 23, 1932, and that on May 21, 1932, the judge who tried the case at Dadeville signed an order at Opelika, Ala., continuing the hearing on the motion for a new trial thirty days from May 21, 1932, but it was also shown without dispute that neither of these orders was ever filed in the office of the clerk of the court or delivered to the clerk of the court to be filed at any time prior to June 13, 1932, and that neither of these orders was, prior to June 13, 1932, marked filed by the clerk, nor entered on the motion docket or any record of the court, nor placed in the covers of the motion docket.

On this same hearing, on July 15, 1932, the defendant presented an affidavit of the clerk of the court showing that there had been no entry of judgment in the case until July 12, 1932, which was after the expiration of the term at which the case had been tried. On that hearing on July 15, 1932, the court overruled plaintiff's motion for a discontinuance of defendant's motion for a new trial, and made an order continuing the hearing on the motion for a new trial.

On August 1, 1932, plaintiff filed a motion for the entry of a judgment nunc pro tunc, and it was set down for hearing on August 6, 1932. On August 6, 1932, the defendant filed a motion in arrest of judgment and filed objections to the entry of the judgment nunc pro tunc, and on August 6, 1932, plaintiff filed a motion to strike the defendant's motion in arrest of judgment.

The court took under advisement all these matters, to wit, the motion for a new trial, the motion for judgment nunc pro tunc, the motion for an arrest of judgment, the motion to strike the motion for an arrest, and on August 12, 1932, made an order in which the court: Denied and refused the motion in arrest of the judgment; withdrew and revoked the order made on July 15, 1932, which denied plaintiff's motion to declare a discontinuance of defendant's motion for a new trial, and granted plaintiff's motion to declare a discontinuance of defendant's motion for a new trial; granted plaintiff's motion for the entry of a judgment nunc pro tunc. This order of the court was filed in the office of the clerk on August 13, 1932, and thereupon the clerk entered in the minutes of the court a judgment in the case.

On August 16, 1932, the defendant filed in the cause a new motion to set aside the verdict and judgment and for a new trial. The plaintiff filed objections to the hearing of that motion for a new trial. And on August 20, 1932, the court made an order sustaining plaintiff's objections to a consideration of the new motion for a new trial, and that motion for a new trial was denied and dismissed.

■ There is a distinction and a difference between the rendition of a judgment and the entry of the judgment in the minutes of the court. In a court of law, where the trial is before a jury, the pronouncement of the court on the verdict rendered is the rendition of judgment, and the entry of such judgment · is the ministerial act of the clerk in making the entry on the minutes to the end that the evidence of the judgment of the court as pronounced may be preserved as a permanent record. Under the practice in this state, in cases tried before a jury, when the jury renders its verdict, the pronouncement of judgment on the verdict follows as a matter of course and the entry by the trial judge on the trial docket of a memorandum of the verdict and judgment is the rendition of the judgment of the court. The minutes of the court evidencing the judgment may be and usually are written at a future time and dated as of the date of the rendition of the judgment. A different rule obtains in decrees required to be signed by judge or chancellor, but judgments in courts of law are not required to be so signed. 48 Corpus Juris, 46 (176); Lanier v. Richardson, 72 Ala. 134; Lanier v. Russell, 74 Ala. 364; Ware v. Kent, 123 Ala. 427, 26 So. 208, 82 Am. St. Rep. 132.

■ With the written verdict of the jury and the memorandum entry of the judge on the trial docket the plaintiff was entitled to have his motion granted to have the judgment entered on the minutes nunc pro tunc. Ware v. Kent, 123 Ala. 427, 26 So. 208, 82 Am. St. Rep. 132; Campbell v. Beyers, 189 Ala. 307, 66 So. 651.

■ The motion of defendant to set aside the verdict and judgment made and filed on April 8th was not acted upon until July 15th, at which time it is made to appear that in Opelika, on April 23d and May 25th, the judge signed orders continuing the hearing of the motion for thirty-day periods, but that these orders were never filed with the clerk at Dadeville and no public record was ever made of such orders. Unless the orders made by the judge at Opelika on April 23d and May 25th and not filed in the case had the effect of keeping the motion alive, the trial court would have no authority in the matter. Code 1923, § 6670; Ex parte Cunningham, 19 Ala. App. 584, 99 So. 834. We do not think that the attempted orders made by the trial judge in Opelika and never filed in the court at

Dadeville, nor ever made known to the clerk, or to the attorney for both parties, were such orders of continuance of the motion as is contemplated by the statute. The motion was discontinued.

It follows from the above that the trial judge properly overruled the motion of defendant for a new trial, properly overruled defendant's motion in arrest of judgment, and properly granted plaintiff's motion for a judgment nunc pro tunc.

It is insisted by appellant that the court erred in overruling its demurrer to the complaint. Following this insistence are many assignments of error relating to the trial of the case, but nowhere in the record do we find a judgment to support these assignments. The only judgment in this record relates to a motion in arrest of judgment, the overruling of defendant's motion for a new trial, and the granting of plaintiff's motion for a judgment nunc pro tunc. While these judgments are all mixed up as a part of the opinion of the trial judge, which is set out in full in the minutes of the court, we have treated them as coming under the influence of section 6088 of the Code of 1923, and as such will support this appeal.

■ Insistence is made that the court erred in overruling demurrers to the several counts of the complaint. Counts 1 and 3 state a cause of action for the destruction of a lien. In these counts the action is in case and not in trover. These counts claim damages for that subsequent to August 20, 1930, and during the remainder of that year and the year 1931, the exact times being unknown, the defendant took and converted to its own use and put beyond the reach of the plaintiff twenty bales of cotton upon which plaintiff had a lien for rent and advances, and plaintiff avers that defendant had knowledge of such lien at the time of such conversion and by said conversion plaintiff lost its lien. Counts 1 and 3 present substantial causes of action in case and are not subject to any of the grounds of demurrer assigned. Kelly v. Eyster, 102 Ala. 325, 14 So. 657; Street v. Treadwell, 203 Ala. 68, 82 So. 28.

It is conceded by appellant that count 4 is a good count and not subject to demurrer.

■ The plaintiff's claim, as disclosed by the evidence, was based upon a mortgage made by J. H. Ashurst to the plaintiff, in which mortgage Ashurst conveyed title to the crops to be grown by him in 1930, and in which, also, he conveyed "also all rents and advances coming to me or us as landlords for each year, all or any of which property the mortgagee or assignee may, after or before maturity thereof, and for payment thereof, seize and sell," etc. This mortgage was effective to assign to the mortgagee the lien of the landlord for rent and for advances made by him to his tenants. Bennett v. McKee, etc., ●144 Ala. 601, 38 So. 129; Leslie v. Hinson, 83 Ala. 267, 3 So. 443; Ballard v. Mayfield, 107 Ala. 396, 18 So. 29.

■ It is also the law that, when a tenant fails to pay any part of the rent or advances, and continues his tenancy under the same landlord, the balance due is advances to him by the landlord for the next succeeding year for which the original lien for advances, if any, remain unpaid, and shall continue and such lien shall also attach to crops of such succeeding year. And this lien continues from year to year until payment is made. Code 1923, § 8801; Bush et al. v. Willis, 130 Ala. 395, 30 So. 443.

■ It follows that when Ashurst assigned his rent and advances for 1930, such assignment carried with it any unpaid rent and advances due Ashurst from his tenants for previous years, provided the tenancy continued for the year 1930. It was therefore competent to prove who were the tenants of Ashurst for 1930 and that their tenancy reached back into 1929 and 1928 and also to prove their accounts with Ashurst during those years.

But if a tenant of 1928 and 1929 was not a tenant of Ashurst in 1930 and cultivated no crop on his land, testimony as to dealings and tenancy in years previous to 1930 would be irrelevant.

■ It was competent for plaintiff to ask the witness Cleve Brown, shown to have been a tenant of Ashurst: Who furnished you supplies in 1930? Objection to this question rests on the contention that the word "supplies" is too general and indefinite. We do not agree to this. "Supplies," when used in connection with dealings between a farm landlord and his tenant, has a well-defined and definite meaning, and means supplies for the well-being of the tenant's family and to make the crop during the term of tenancy. It was also competent to prove by this witness the balance due by him for previous years of his tenancy.

There are many objections to questions made by appellant, the most of them being general, and these objections are mentioned in appellant's brief in such a general way and without citation of authority as really not to require notice and for that reason we

treat them generally. None of these objections raise questions which could materially affect appellant's rights even if some of them should be found to constitute technical error.

■ Objection is made to a question asked Ashurst as to rent paid by a tenant who had cultivated land belonging to the wife of Ashurst. It appears from the record that this tenant rented the land from Ashurst. This made the evidence relevant. It was also relevant to prove by this witness (Ashurst) that he, as landlord, advanced supplies to the tenant Dave Henry, who, though farming on land belonging to Mrs. Ashurst, had rented the land from and was the tenant of Ashurst.

It was also relevant to prove the tenancy and advances made to Henry during the years 1928 and 1929, to show what balances, if any, had been carried over to 1930.

There is a series of questions propounded to the witness Ashurst regarding a mortgage taken by Ashurst from a man by the name of Moore and on which land the tenant Henry had cultivated and raised some cotton in 1930. This was a collateral matter bearing upon the relations existing between Ashurst and Henry. No claim was made by plaintiff under the Moore mortgage and no liability arose against this defendant by reason of any answers made to these questions. If any of these rulings were error, such error was without injury.

■ Objection and exception is taken to a question asked plaintiff's witness Fenn. As to this, Fenn was assistant treasurer of Union Springs Guano Company in the years 1928, 1929, and 1930, and he was being asked about payments that had been made by J. H. Ashurst in 1930. The question objected to was: "Where did you put that $200.00; was it put on the $133.00 note?" The objection was on the ground that no such note was in evidence as a $133 note. The evidence had shown, by Fenn, that Union Springs Guano Company had three notes given it by Ashurst, one of them being the $133.82 note. Certainly, it could be shown that this $133 note had been paid, even though it had not been introduced in evidence; it was later shown that the $133 note had been prior to that time fully paid and turned over by Union Springs Guano Company to J. H. Ashurst. There was nothing to show, as contended by appellant, that credit should have been put on either of the mortgages upon which Union Springs Guano Company was claiming in the suit. There was no showing that Ashurst had directed the application of the money, or for that matter that the payment was the proceeds of any cotton upon which Union Springs Guano Company had a mortgage or had a lien. It is true that Fenn, the witness, had testified that $200 had been made up of three different items, but the evidence also showed that Mr. Ashurst had sent Union Springs Guano Company a check for $200 and that the three items came from the cotton of Brewer, cotton of Harris, and cotton of Aiken; neither of those tenants or Ashurst is named in the complaint, and there is nothing to show that Union Springs Guano Company even had any knowledge, from Ashurst, or otherwise, that those three people were tenants of J. H. Ashurst. And, as stated, Union Springs Guano Company did not get the cotton; Ashurst simply sent that company a check for $200.

■ It seems to us obvious that charge A given at the request of plaintiff states the law correctly. If the complaint claims a lien for both rent and advances and the evidence discloses a lien for either, with notice, etc., plaintiff would be entitled to recover. In other words, the burden was not on plaintiff to prove a lien for both rent and advances. Either, sufficiently proven, would make out plaintiff's case. It may be that this charge did not go far enough in hypothesizing notices, etc.; but if this be so, when the charge is taken and considered along with the court's oral charge it becomes perfectly clear.

■ On the question of notice it was competent for plaintiff to prove that defendant was served with a list of tenants of Ashurst for the years 1928 and 1929, they being the same persons from whom defendant bought cotton covered by plaintiff's lien in 1930.

There is a conflict in the testimony on the question of notice and ample evidence upon which to base the finding of the jury that defendant had legal notice of plaintiff's lien.

■ While the witness Ashurst was being examined as a witness for plaintiff regarding a mortgage made by a tenant (Jack Raily) to one Bridges, in which Ashurst had joined as landlord, plaintiff's attorney asked this question: "In that mortgage did you state there is no lien on the crops hereby conveyed except to J. H. Ashurst, landlord?" This question was objected to on the specific ground that it called for the contents of a paper. The specific ground of objection eliminated all others. The mortgage inquired about was collateral, the contents of which could be testified to orally.

The witness answered the foregoing question in the affirmative and then the following occurred; the witness proceeded voluntarily: "You asked me about Dave Henry, the same thing was about Dave Henry, Bridges furnished them both and I allowed them to give a mortgage on the individual crop and I waived all interest I might have in it. The defendant objected to this, stating to the court that it would have no effect on this defendant, the Mt. Vernon Woodberry Mills being a transaction with another person and moved to exclude what had already been testified about it, stating that it is absolutely foreign to the issues here. The court said, 'I can see how it might be competent.' Defendant's counsel asked, 'Against this defendant?' The court said against anybody. The court further said, 'If a man shall represent another person for a long series of years and he is the one who has control and management of these anything he might say might be relevant in that place of it.' To this action and ruling of the court the defendant duly and legally reserved an exception defendant's counsel stated, 'We object and move to exclude what Your Honor states, what Your Honor thinks about it.' The court then said to the jury, 'What I think, gentlemen of the jury, has nothing in the world to do with it. I will just let it go on as it is.' To this action and statement of the court the defendant then and there duly and legally reserved an exception. The court then further stated, 'And if it isn't a correct statement it can be entirely controlled by the ruling of the court.' To this statement of the court the defendant duly and legally reserved an exception."

Other evidence tended to show that Ashurst had been in possession of his wife's lands for a period of forty years; renting them, advancing to the tenants, treating them as his own, and with no accounting to the wife. The statement in the mortgage was in the nature of a declaration of a party in possession as tending to prove the character of his possession, and was relevant as tending to prove the relationship between Ashurst and the two tenants as to whether they had rented from him individually or from him as agent for his wife. Smith v. Bachus, 195 Ala. 8, 70 So. 261.

The cotton voucher, headed "Tallassee Mills—8–28–30," purporting to show cotton purchased from J. H. Ashurst, the weight being 509 pounds, was admissible as tending to fix a liability under the fourth count of the complaint on defendant, the Tallassee Mills being the same as the defendant.

We find no prejudicial error in the record, and the judgment is affirmed.

Affirmed.