75 So.2d 153

### Joe FRANK

v.

### Mamie Lee JOHNSON et al.

5 Div. 560.

Supreme Court of Alabama.

Oct. 7, 1954.

Rehearing Denied Nov. 4, 1954.

Wm. C. Hare and Powell & Powell, Tuskegee, for appellees.

Harry D. Raymon and Russell & Russell, Tuskegee, for appellant.

CLAYTON, Justice.

This appeal by Joe Frank, respondent below, is from a decree of partition whereby he was awarded 36¼ acres of land, in fee, same being one-half of the acreage decreed as jointly owned by complainants and respondent, his interest having been found by the trial court to have been an undivided one-half interest in 72½ acres. There was no doubt of his ownership of an undivided one-half interest, but he claimed complete title in 72½ acres by adverse possession.

It was agreed by stipulation in the record that Sam Johnson died in 1903 or 1904 owning 75 acres of land which he acquired by deed in 1878 from Adeline Roberts; that Wesley Johnson and Jack Johnson were the sons and only surviving heirs of Sam Johnson, and they inherited the property involved in this suit; and that complainants are the lawful heirs of Jack Johnson.

The chronology of transactions affecting the lands, so far as the evidence shows, is as follows: That Sam Johnson executed mortgages on the lands (75 acres) to Miss Issie Stevens each year from 1898 to 1903 inclusive; that Wesley Johnson and Jack Johnson, on March 1, 1904, gave separate mortgages to Miss Issie Stevens in which they each separately conveyed "my interest in the land of Sam Johnson, deceased, and described particularly in a mortgage held by Miss Issie Stevens against Sam Johnson". Later in the same year of 1904, on May 11th, Jack Johnson and Wesley Johnson and wife executed a joint mortgage to the same mortgagee for the exact total of the said individual mortgages plus $50, and the separately executed mortgages were satisfied. In this joint mortgage, the property is described as "the south part of east half of section 2, township 15, range 22. About 75 acres more or less situated in Beat 6, Macon County, Alabama."

Jack Johnson executed individual mortgages to Miss Issie Stevens conveying his one-half interest in the lands of Sam Johnson in 1905 by which he describes the lands by reference to the 1904 mortgage, and in 1906 and 1907, in which the land is described by numbers, the same as in the 1904

mortgage of Sam Johnson. Wesley Johnson and wife executed mortgages to the same mortgagee in 1907 and 1908, conveying "my interest in about 75 acres in southern part of eastern half of section 2, township 15, range 22."

In 1909 and 1910, Wesley Johnson executed mortgages to the same mortgagee conveying "72 acres in the southwest quarter of section 2, township 15, range 22, being known as the Sam Johnson lands."

In 1913, he executed a mortgage to the same mortgagee conveying "75 acres in the southeast quarter of section 2, township 15, range 22, situated in Macon County, Alabama."

In 1914, 1915, 1916, and 1921, Wesley Johnson and wife executed mortgages to Thomas Edwards, conveying "75 acres in southeast quarter of section 2, township 15, range 22, bounded as follows: On the north by plantation known as Matt Boyd place now owned by B. M. Carr, on the east by land of Judge S. T. Frazier and Wash Wood, on south by the Henry Cloud Place, on west by place now owned by Mose Green. But the following parcel of land is excepted from the above, to-wit: 2½ acres in the corner of the LaPlace and Cotton Valley Road and the LaPlace and Hardaway Road, said 2 and ½ acres being in the said southeast quarter of said section 2, township 15, range 22."

In 1924, Wesley Johnson and Jack Johnson jointly executed to Thomas Edwards a mortgage on "2½ acres in the corner of the LaPlace and Cotton Valley Road and the LaPlace and Hardaway Road in southeast quarter of section 2, township 15, range 22."

No foreclosure deed was introduced on the trial but G. M. Edwards and W. M. Russell, attorney, testified that the 1921 mortgage of Wesley Johnson to Thomas Edwards was foreclosed somewhere around 1935 or 1936, and the 72½ acres was bought at foreclosure sale by the First National Bank of Union Springs which conveyed it to appellant in 1938. After its purchase of the property at the foreclosure sale, the First National Bank of Union Springs on

June 29, 1937, filed a suit against Wesley Johnson, et al., to quiet title to the 72½ acres. Jack Johnson was not made party-respondent to that suit but he filed an answer and cross-bill on June 24, 1939, claiming his undivided one-half interest in the land and challenged the right or title of the First National Bank of Union Springs to any interest therein. After fourteen continuances, that case was dismissed in 1945. There is testimony that Wesley Johnson remained on the land after the foreclosure until he was put off, but the manner and time are not stated.

It was admitted by all parties that the 2½ acres in the forks of the road was owned by Jack Johnson and that it is now owned by complainants.

Appellant's claim to the 72½ acres, in one aspect, is based on the following theory that he undertook to prove without direct evidence to support. Jack Johnson and Wesley Johnson had a division of the 75 acres whereby Jack took 2½ acres in the forks of the road and Wesley Johnson took the other 72½ acres which are here involved. The exact time of this alleged division is not shown, and no dates or written memoranda thereof were shown to have been made. The county tax collector testified that the lands (75 acres) were assessed to Wesley Johnson since 1904 and until 1935 or 1936; that sometime about 1935 or 1936, 2½ acres were assessed to Jack Johnson and 72½ acres went to the First National Bank of Union Springs.

Oral testimony from Dave Pearson was to the effect that Jack had told him he had sold out to "Wes." Dave said this was in 1912.

A purported quit-claim deed from Jack Johnson to Miss Issie Stevens was offered in evidence by respondent. It was dated December 21, 1908, and for a consideration of $208.69 quit-claimed to grantee the following: "35 acres lying in northwest corner of section 2, township 15, range 22. These lands being a part of the Roberts Place and known as the Sam Johnson Place". No evidence was offered to show that this instrument was ever recorded. It was admitted that the tax records of Macon County did not show any lands in section 2 ever assessed to Miss Issie Stevens, nor was there any deed from Miss Issie Stevens to respondent or his predecessors in title. The only transaction between any of them having been the transfer to Thomas Edwards by the administratrix of the estate of Miss Issie Stevens of the 1913 mortgage. Several witnesses testified that Sam Johnson never owned any land in this vicinity other than the 75 acres described in the bill of complaint. The trial court in its decree held that this deed was not competent evidence. In this he was correct. Appellant offered no evidence that he held title under this deed or the grantee therein in any way. For this reason we forego discussion of the possible conflicting descriptions in the deed and the possibility that the lands involved in the present suit were intended to have been conveyed thereby. G. M. Edwards did testify that when his father, Thomas Edwards began doing business with Wesley Johnson, "he took up" a mortgage from Miss Issie Stevens which was executed by Wesley Johnson in 1913; that it was endorsed, transferred to Thomas Edwards by Mrs. J. S. Daniel, as administratrix, but there is no connection shown between this mortgage and the purported deed.

The trial court in its decree in the case at bar, found that Jack Johnson had at no time executed any conveyance of his interest in the property to anyone, although it was apparent that Wesley Johnson exercised control over it. It found further that Jack Johnson did, by filing certain writings in court on one or more occasions, give notice to the world that he did claim an interest in the property. The evidence was undisputed that of the two brothers, Wesley was the dominant character and Jack was his inferior referred to in the testimony as a "lame duck".

Respondent, in his cross-bill, sought alternatively:

1. That the bill of complaint be dismissed.

2. That respondent be decreed to have complete title to the 72½ acres by adverse possession for over ten years.

3. That the deed from Jack Johnson to Miss Issie Stevens be reformed to convey his interest in the lands, the subject of this suit.

4. That respondent be awarded his share of the lands in kind which would include that portion upon which he had placed improvements.

It is to be noted that neither the estate of Miss Issie Stevens nor the heirs of Miss Issie Stevens are parties to the instant suit.

The court had a surveyor to divide the 72½ acres into two tracts equal in area and by its decree vested in respondent complete title to the tract upon which the respondent had erected two houses and other improvements. There was testimony that the land was all of the same kind and value except for improvements erected thereon by respondent, the old houses having about fallen down and respondent having built two new ones. Thus the relief decreed by the court was that prayed for in the 4th alternative prayer of respondent's cross-bill. This is assigned by appellant as error for the reason that complainant's original bill contained no general prayer but only a specific prayer for a sale of the property for division of the proceeds of sale, and respondent's cross-bill was stricken by the court because filed after testimony taken and the cause submitted for decree.

It is true that this court, in the early case of Driver v. Fortner, 5 Port. 9, 26, held:

"The prayer of a bill is deemed an essential part of it and if it want it, no decree can be rendered in favor of the complainant.

"Bills usually seek both specific and general relief, viz: That certain things therein expressed may be decreed, 'and that the complainant may have such other or further relief, as shall seem meet, or the case may require.' If this latter prayer be made the Court will adjudge to the complainant such relief as is compatible with the case made out by the bill; although it be other than that specially asked; and even if the

special prayer be wholly omitted it is competent under the general prayer to give the proper relief. But if a bill ask for specific relief only the Court is confined in its action to the special prayer and cannot go beyond it."

And this rule has been followed or cited in McDonald v. Mobile Life Ins. Co., 56 Ala. 468, 470; Majors v. Killian, 230 Ala. 531, 534, 162 So. 289; Pate v. Hall, 220 Ala. 411, 125 So. 650. But while the case before us was pending in the trial court from 1947 to 1953, in an effort to dispose of the case, the trial judge, on April 27, 1950, made an order fixing May 17th as the day for final submission of the cause for decree and requiring that all testimony be taken before that time. Respondent, on June 1, 1950, filed an amended answer and cross-bill which, on June 9th, complainant moved to strike because it came too late—after testimony was taken and the cause was under submission under note of testimony dated January 10, 1950. On this motion we find the following bench note copied into the record:

"6–9–50—Respondent files motion to strike answer and cross-bill and the motion to strike is overruled as to amendment to answer and is sustained as to the cross-bill and respondent excepts to the ruling of the court relating to the cross-bill. (Signed) Will O. Walton, Judge."

Subsequent to the above, the trial judge made a further order dated June 10, 1950, fixing June 22, 1950, as the time for taking further testimony and requiring that the cause be submitted for final decree upon completion of that testimony. Further testimony was taken on June 22, 1950, after which a note of testimony bearing date June 22, 1950, was signed by the solicitors for all parties and by the register. This note of testimony begins: "Submitted for decree upon the original bill, answer and *cross-bill as amended* * * *." Also, the court's decree begins with the following recital: "This cause coming on to be heard is submitted to the Court for decree upon the original bill of complaint and upon the answer and *cross-bill as amended* * * *."

In view of the foregoing, there is no merit in appellant's assignment of error directed to the sustaining of complainant's motion to strike appellant's cross-bill. The decree did not follow the bench note but contrarily treated the cross-bill as not stricken or as having been refiled after having been stricken and granted relief in accordance with one of its alternative prayers. Bench notes are not of the same order of solemnity as the decree and in case of conflict recitals in the decree must govern. The following cases tend to support this statement: Wilbanks v. Mitchell, 239 Ala. 167, 194 So. 513; J. R. Watkins Co. v. Goggans, 242 Ala. 222, 5 So.2d 472; Bertrand v. Taylor, 250 Ala. 15, 32 So.2d 885; Jones v. Daniel, 34 Ala.App. 490, 41 So.2d 627; Cooper v. Owen, 230 Ala. 316, 161 So. 98; Mt. Vernon-Woodberry Mills v. Union Springs Guano Co., 26 Ala.App. 136, 155 So. 710, certiorari denied 229 Ala. 91, 155 So. 716; Briggs v. Tennessee Coal, Iron & R. Co., 175 Ala. 130, 57 So. 882; Coal City Mining Corporation v. Davis, 17 Ala.App. 22, 81 So. 358.

If the recitals in the court's decree were incorrect, appellant could have sought correction by a timely motion to modify the decree. Respondent's efforts to show a division of the property between Jack Johnson and Wesley Johnson, and an abandonment by Jack of all claim to the 72½ acres consisted largely of parol testimony and inferences. The trial court, after hearing the testimony ore tenus, found that the evidence did not establish such division or relinquishment of right in the 72½ acres by Jack. The evidence supported his findings and we are not able to hold him in error in that regard. Ala. Dig., Appeal and Error, ☞1008(1).

This brings us to consideration of the question as to whether appellant established title to the 72½ acres by adverse possession under Tit. 7, § 828, of the Code of 1940, regardless of any action on the part of Jack Johnson. Joe Frank, the appellant, as purchaser under deed from the First National Bank of Union Springs, dated November 17, 1938, moved on the place in the latter part of 1939 and held it against the world until this suit was filed in 1947. Albert Sanford, son-in-law of Wesley Johnson, farmed the land in 1937 and 1938 and paid rent to the First National Bank of Union Springs. Until the foreclosure and ousting of Wesley Johnson from possession, the date of which is not shown, Wesley and Jack were co-tenants and the possession by Wesley was prima facie for the joint benefit of his co-tenant Jack. Hays v. Dillard, 176 Ala. 109, 57 So. 695; Winsett v. Winsett, 203 Ala. 373, 83 So. 117.

The question for us to decide is, was the possession by the First National Bank of Union Springs and Joe Frank of such character and duration as to perfect title in Joe Frank by adverse possession as against Jack Johnson and his heirs. Jack died about 1945.

As there is no averment nor proof of the recording of any deed prior to the deed from the First National Bank of Union Springs to Joe Frank dated November 17, 1938, and filed for recording May 11, 1943, and the instant case was filed in 1947, appellant's claim to title, under § 828, by adverse possession, must rest upon adverse possession coupled with annual assessment of the property for taxes for ten years; and it was necessary for him to have shown by the evidence that Jack Johnson had actual knowledge of the hostile character as to him of the possession by the other co-tenant. Sibley v. McMahon, 210 Ala. 598, 98 So. 805; Ratliff v. Ratliff, 234 Ala. 320, 175 So. 259; Winsett v. Winsett, 203 Ala. 373, 83 So. 117, supra; Oliver v. Williams, 163 Ala. 376, 50 So. 937; Ashford v. Ashford, 136 Ala. 631, 34 So. 10, 96 Am. St.Rep. 82; Kidd v. Borum, 181 Ala. 144, 61 So. 100.

Searching the record for evidence of knowledge by Jack Johnson that the First National Bank of Union Springs and Joe Frank were holding adversely to him, we find that after its purchase at the foreclosure sale under Wesley Johnson's mortgage to Thomas Edwards, dated in 1921, the First National Bank of Union Springs instituted suit to quiet title to the 72½ acres in 1937. Apparently, it was not aware.

of the fact that Jack Johnson was then living, for he was not made party-respondent to the bill. The case was continued for two years while service was being perfected on some of the Johnson heirs (presumably of Wesley Johnson) until 1939, when Jack evidently learned of the suit and filed an answer asserting his claim and right to an undivided one-half interest in the 72½ acres.

◼ We do not find any evidence prior to the filing of Jack's answer and cross-bill that he had actual knowledge of the adverse character of the possession of the land either by appellant or his predecessor in title, the First National Bank of Union Springs. For that reason we must hold that the trial court properly found that appellant did not at the time of the filing of the present suit have complete title to the 72½ acres perfected by adverse possession. The ten years had not run since Jack learned of adverse character of the holding against him. Tit. 7, § 828, Code 1940; Sibley v. McMahon, supra; Ratliff v. Ratliff, supra; Winsett v. Winsett, supra; Oliver v. Williams, supra; Ashford v. Ashford, supra; Kidd v. Borum, supra.

◼ There remains for our consideration the matter of allowance of a fee for solicitors for complainant in regard to which the court's decree ordered the register to hold a reference to ascertain the proper amount. Respondent, in assignment of error, raises the point that the relief granted was not in accord with the original bill but was awarded in accordance with the prayer of the cross-bill. The allowance of solicitors' fees is largely vested in the discretion of the trial court. Tit. 46, § 63, Code of Alabama 1940; Bidwell v. Johnson, 191 Ala. 195, 67 So. 985; Matthews v. Lytle, 220 Ala. 78, 124 So. 197; Snead v. Lee, 218 Ala. 44, 117 So. 469; Broughton v. Nance, 244 Ala. 499, 14 So.2d 505.

◼ Also, while no solicitors' fees have been yet allowed, and cannot be rejected here, we call attention to a line of cases which hold that the relief granted in this case by the decree was not inconsistent with the purpose of the original bill. Berry

v. Tennessee & C. R. Co., 134 Ala. 618, 33 So. 8; Cain v. Gimon, 36 Ala. 168; Harrell v. Mason, 170 Ala. 282, 54 So. 105; Sharpe v. Miller, 157 Ala. 299, 47 So. 701.

The decree did not afford complete relief by granting lands in fee to each party-complainant but decreed 34¼ acres to all complainants jointly. But, in view of the fact that appellees do not complain by assignment of error, this matter is not before us for review. Not finding error in the record, we hold that the case should be, and is, affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.